James M. Dowd (SBN 211280)
*james.dowd@wilmerhale.com*
Derek A. Gosma (SBN 274515)
*derek.gosma@wilmerhale.com*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Tel: +1 213 443 5300

Joseph F. Haag (SBN 248749)
*joseph.haag@wilmerhale.com*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: +1 650 858 6000

Kate Saxton (*Pro Hac Vice Application Pending*)
*Kate.Saxton@wilmerhale.com*
George F. Manley (*Pro Hac Vice Application Pending*)
*George.Manley@wilmerhale.com*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: +1 617 526 6000

*Attorneys for Plaintiff Skyworks Solutions, Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| SKYWORKS SOLUTIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KANGXI COMMUNICATION TECHNOLOGIES (SHANGHAI) CO., LTD., AND GRAND CHIP LABS, INC.,<br><br>Defendants. | **CASE NUMBER:** 8:24-cv-00974<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1.      Plaintiff Skyworks Solutions, Inc. ("Skyworks") brings this Complaint in the Central District of California (the "District") against Defendants Kangxi Communication Technologies (Shanghai) Co., Ltd., ("KXComTech") and Grand Chip Labs, Inc. ("GCLI") (collectively, "KCT" or the "KCT Defendants") for infringement of United States Patent Nos. 8,717,101 (the "'101 patent"), 9,917,563 (the "'563 patent"), 9,450,579 (the "'579 patent"), and 9,148,194 (the "'194 patent") (collectively, the "Asserted Patents").

## THE PARTIES

### A.      Skyworks

2.      Skyworks is a California Corporation with its principal place of business at 5260 California Avenue, Irvine, California 92617.   Skyworks is renowned in the wireless semiconductor industry for its innovative approach to radio frequency and semiconductor system design.  It is a worldwide leader in the Wi-Fi front-end-module ("FEM") industry based in part on the success of its strong and long-standing investments in research and development right here in California and throughout the United States.  Wi-Fi is a family of wireless network protocols based on the Institute of Electrical and Electronics Engineers ("IEEE") 802.11 series of standards.  Skyworks provides innovative Wi-Fi FEM chips that are used in a wide array of products that play critical roles in the U.S. economy, including in enabling reliable Wi-Fi connectivity for the network of wireless devices that power today's economy and infrastructure.

3.      Skyworks' technology enables everything from daily essentials like smartphones, computers, and Internet of Things (IoT) devices to societal necessities like lifesaving patient telemetry in hospitals, advanced security systems, and industrial automation.  Skyworks' technology also serves the aerospace and national defense sectors, among others.

4.      As one of the largest producers of Wi-Fi FEMs in the world (Ex. 1 [Mordor Intelligence Report] at 4), Skyworks is committed to developing innovative solutions to meet the ever-evolving demands for wireless communication across many industries.  To that end, Skyworks spent more than $600 million on research and development in 2022 alone, for example, and it has been awarded more than 4,600 patents worldwide in recognition of its pioneering innovations.   (Skyworks Solutions, Inc., *2022 Annual Report*, [https://perma.cc/LU9D-7TBQ] at 83, 88.)

5.      Skyworks employs thousands of scientists, engineers, and other personnel in the United States, including at its numerous facilities right here in California.

### B.      The KCT Defendants

6.      Defendant KXComTech is a corporation organized under the laws of the People's Republic of China ("PRC"), with its principal place of business located at 5th Floor, Building 10, No.399 Keyuan Road, Pudong New Area, Shanghai, PRC.

7.      Established in 2014, KXComTech offers Wi-Fi FEM products compliant with the Wi-Fi 6, 6E, and 7 protocols, among others.  According to its website, KXComTech was "founded by seasoned experts with global experience[] in the field of RF chip design, application, production, and sales" and operates with a mission to "provide wireless devices with faster speed, lower latency, higher capacity and wider coverage for more complex and diversified network access scenarios."   (KXComTech, *About Us*, [https://perma.cc/ST82-V7TA].) KXComTech has stated publicly that "most of [its] R&D teams" have "overseas work experience" at American semiconductor companies, like Skyworks.  (Ex. 2 [KCT Press Release] ("Most of the R&D teams … have overseas work experience in RFaxis (acquired by Skyworks in 2016), RFMD (merged into Qorvo), Anadigics and other internationally renowned RF front-end chip companies[.]").)

8.      KXComTech purports to work with distributors to sell its products in the United States, China, and Taiwan.  (KXComTech, *Distributors*,

[https://perma.cc/39JG-J7Y6].)  It also sells its products directly in all three markets. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

9.    On November 17, 2023, KXComTech was officially listed on the Shanghai Stock Exchange's Science and Technology Innovation Board. (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6].)  According to its public offering filings, KXComTech employs 156 people, has a market capitalization of $1.24 billion, and an enterprise value of $1.16 billion.

10.    GCLI is a corporation organized under Nevada law and domiciled in California with a principal place of business at 14151 Newport Ave., Suite 204, Tustin, CA 92780.  (Ex. 3 [GCLI California Corporation Registration].)  GCLI is a wholly owned subsidiary of KXComTech.    (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

11.    On information and belief, GCLI is directly controlled by KXComTech and handles business development for and sales of KXComTech Wi-Fi FEM products in the United States.

12.    KCT has recently announced its intent to attempt to displace Skyworks in the market for Wi-Fi FEM chips.  (Wi-Fi Now, *Meet KXcomtech: On track to ship hundreds of millions in Wi-Fi FEMs in 2022*, [https://perma.cc/R3R7-5B47].)  For instance, KCT advertises its products as being pin-to-pin compatible with Skyworks' products (*see*, *e.g.*, Ex. 4 [KCT Product Roadmap Presentation] at 8-24), and has publicly compared its products to Skyworks' products "in terms of linearity, efficiency, noise figure, and other performance metrics" (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6]).  KCT chose to locate its United States sales and marketing entity, GCLI, less than ten miles from Skyworks' corporate headquarters.  Moreover, KCT has intentionally targeted and continues to target Skyworks' customers in an attempt to convince them to switch to purchasing Wi-Fi FEMs from KCT, and to incorporate those KCT FEMs into their Wi-Fi enabled products.  KCT has engaged in this conduct despite knowledge of Skyworks' patent

portfolio generally and the Asserted Patents in particular.  On information and belief, the Wi-Fi FEMs that KCT offers for sale to Skyworks' customers copy Skyworks' technology, including the technology covered by the Asserted Patents.

## JURISDICTION AND VENUE

13.    This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

### A.    KXComTech

15.    KXComTech is subject to this Court's specific and general personal jurisdiction due at least to its substantial business in this State and District, including by regularly doing or soliciting business, engaging in other persistent conduct targeting residents of California and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported vicariously through and/or in concert with its related entities, alter egos, intermediaries, agents, distributors, partners, subsidiaries, clients, customers, affiliates, and/or consumers.

16.    For instance, GCLI is responsible for selling KXComTech's products to customers in the United States and for developing KXComTech's business in U.S. markets.  GCLI is 100% owned by KXComTech (Wi-Fi Now, *David L. Recker*, [https://perma.cc/AJT7-MDWU] (identifying GCLI as a "[w]holly owned US subsidiary of KXcomtech")), and KXComTech's chairman, Dr. Ping Peng, is GCLI's corporate president, treasurer, and sole director (Ex. 5 [GCLI Corporate Registration]).  GCLI is registered to do business in California and maintains its principal place of business in this District located at 14151 Newport Ave., Suite 204, Tustin.  (Ex. 3 [GCLI California Corporation Registration].)

17.    On information and belief, KXComTech also directs and authorizes the sale and distribution of infringing products in California, including in this District.

For instance, KXComTech's website lists an individual employed by GCLI as its General Representative of North America for sales. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)    Further, KXComTech's website lists Disman Bakner as its United States distributor for the California market. (KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)    On information and belief, KXComTech directs and authorizes both GCLI and Disman Bakner to distribute infringing products in California.

18.    Venue is proper in this District as to KXComTech because it is a foreign corporation organized under the laws of the People's Republic of China, with a principal place of business in Shanghai, China.  Because KXComTech is not a resident of the United States, it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

**B.    <u>GCLI</u>**

19.    This Court has personal jurisdiction over GCLI because it is domiciled in California and lists its principal place of business in California.  (Ex. 3 [GCLI California Corporation Registration].)

20.    This Court also has personal jurisdiction over GCLI because it regularly transacts business in this District by, among other things, offering infringing products to customers, business affiliates, and partners located in the District.  For instance, an individual employed by GCLI is listed on KXComTech's website as KXComTech's General Representative of North America for sales. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

21.    Venue is proper in this District as to GCLI pursuant to at least 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(2), 1391(d), and 1400(b) because GCLI is subject to personal jurisdiction in this District, has a regular and established place of business in this District, and has committed acts of infringement in this District.  For example, GCLI lists its principal place of business as 14151 Newport Ave., Suite 204, Tustin, CA 92780, which is located in this District less than five miles from the

Ronald Reagan Federal Building and United States Courthouse. (Ex. 3 [GCLI California Corporation Registration].)

## FACTUAL BACKGROUND

### A. Technology Background

22. The Asserted Patents relate to an innovative collection of technologies for improving the performance and design of FEMs, including Wi-Fi FEMs. These technologies relate to various aspects and features of FEMs, including power amplifiers, low-noise amplifiers, and radio frequency switches.

23. Skyworks has been at the forefront of advancing wireless connectivity technologies, and its commitment to innovation can be seen across all of its business segments, including its Wi-Fi FEM product offerings.

24. Wi-Fi FEMs are integrated circuits contained in wireless routers (and many other devices) that enable wireless communication with a user device (*e.g.*, a computer or smartphone) so that the user device can transmit and receive information with other systems, such as via the internet. Wi-Fi FEMs are typically located between the wireless router's antenna and its transceiver and are generally comprised of semiconductor components, including but not limited to, power amplifiers, low noise amplifiers, and switches.

25. When a user device accesses the internet, it sends signals requesting data and receives the data in response. When a user device uses Wi-Fi to request access to the internet, it sends a wireless signal to the wireless router. The wireless router processes the signal and passes it to the internet. When the internet responds, the wireless router processes the response, determines which user device to send the response to (if there are multiple user devices connected to the wireless router), and wirelessly sends the response to the appropriate user device.

26. Proper wireless communication between a user device and a wireless router requires transmission of strong and clear wireless signals. However, myriad external factors can weaken or warp the signal during transmission. As a result,

signals received by a wireless router often need to be adjusted so that they can reach their intended destination in a discernable fashion. This signal adjustment is typically performed by the wireless router's Wi-Fi FEM. In addition, a wireless router uses its Wi-Fi FEM to amplify signals for transmission.

27. For example, during the transmission of a wireless signal from the wireless router to a user device, outside noise sources may disrupt the transmitted signal. This disruption is commonly referred to as "interference," and it can decrease the strength and quality of the signal sent from the wireless router to the user device. To prevent this, the wireless router sends the signal from its transceiver to the Wi-Fi FEM for adjustment for wireless transmission. The Wi-Fi FEM uses power amplifiers to strengthen the signal without distorting it. This reduces the impact of any interference the signal might experience during transmission so that a strong and clear signal can be received by the user device.

28. Further, when the wireless router receives a signal from the user device, factors such as the distance between the wireless router and the user device can reduce the signal strength. To account for this, the wireless router uses the Wi-Fi FEM for adjustment of the received wireless signal. The Wi-Fi FEM can use its low-noise amplifier to both amplify the strength of the signal and isolate the signal from interference. This ensures that the signal received by the wireless router is strong enough for the wireless router to properly process and route.

29. The Asserted Patents reflect Skyworks' many years of dedication, expertise, and investment in research and development related to Wi-Fi FEMs. Designing Wi-Fi FEM chips that can keep pace with new wireless networking capabilities has posed significant challenges for Wi-Fi FEM producers—especially given the increasing need for smaller and more efficient chips. The technologies of the Asserted Patents address these challenges by enhancing Wi-Fi FEM performance

in a power-efficient manner through use of improved circuitry associated with power

amplifiers and innovative RF switch systems.

**B.    The Asserted Patents[1]**

30.    As set forth below, KCT has been and is still infringing the Asserted

Patents by making, using, offering for sale, selling, or importing RF FEMs that

practice the Asserted Patents, or by contributing to infringement or inducing others

to infringe.    KCT's acts of infringement have occurred within this District and

elsewhere throughout the United States.

i)    *The '101 Patent*

31.    The '101 patent, entitled "Apparatus and methods for biasing power

amplifiers," was duly and legally issued on May 6, 2014, and has been in full force

and effect since its issuance.  A true and correct copy of the '101 patent is attached

hereto as Exhibit 6.

32.    Skyworks owns all rights to the '101 patent, including the full and

exclusive right to enforce the patent and seek all legal and equitable remedies for

infringement thereof.

33.    The '101 patent relates generally to radio frequency ("RF") power

amplifier systems and methods for biasing of power amplifiers.

34.    The '101 patent explains that prior art power amplifiers struggled to

granularly manage the "amplification of a RF signal," which is necessary because

"amplifying the RF signal to an incorrect power level can cause a wireless device to

transmit out of band."  (Ex. 6 ['101 patent] at 1:28-30.)  As such, the '101 patent

---

[1] All non-technical descriptions of the Asserted Patents included in this Complaint
are presented to give a general background to the patents.  Statements made in
connection with these non-technical descriptions are not intended nor should they be
used for purposes of patent claim construction.  Skyworks presents these statements
subject to and without waiver of its right to argue that claim terms should be
construed in a particular way under claim interpretation jurisprudence and the
relevant evidence.

explains that there was a need for "improved power amplifier systems" and "improving power amplifier biasing." (*Id.* at 1:31-33.)

35.     The '101 patent addresses this problem, for example, through a "power amplifier system" that may contain a "bias block [that] includes a time dependent signal generator configured to shape an enable signal of the power amplifier to generate a control current, a current amplifier configured to amplify the control current to generate a correction current, and a primary biasing circuit configured to generate a bias current for the power amplifier based at least partly on the correction current." (*Id.* at 1:37-46.)   According to the '101 patent, such a power amplifier system "correct[s] for a variation in gain of the power amplifier when the power amplifier is enabled" (*id.* at 1:46-48), which "can improve the power amplifier's performance" (*id.* at 4:39-42).

ii)     *The '563 Patent*

36.     The '563 patent, entitled "Apparatus and methods for biasing of power amplifiers," was duly and legally issued on March 13, 2018, and has been in full force and effect since its issuance.[2]  A true and correct copy of the '563 patent is attached hereto as Exhibit 7.

37.     Skyworks owns all rights to the '563 patent, including the full and exclusive right to enforce the patent and seek all legal and equitable remedies for infringement thereof.

38.     The '563 patent relates generally to RF power amplifier systems and methods for biasing of power amplifiers.

39.     The '563 patent explains that prior art power amplifiers struggled to granularly manage the "amplification of a RF signal," which is important because "amplifying the RF signal to an incorrect power level can cause a wireless device to

---

[2] The '563 patent is a continuation of U.S. patent application No. 14/825,053, which is a continuation of U.S. patent application No. 14/242,150, which is a continuation of U.S. patent application No. 13/468,749 that issued as the '101 patent that Skyworks asserts in this Complaint.

transmit out of band." (Ex. 7 ['563 patent] at 1:38-41.) As such, the '563 patent explains that there was a need for "improved power amplifier systems" and "improving power amplifier biasing." (*Id.* at 1:42-44.)

40. The '563 patent addresses this problem, for example, through a "power amplifier system" that may contain a "bias block [that] includes a time dependent signal generator configured to shape an enable signal of the power amplifier to generate a control current, a current amplifier configured to amplify the control current to generate a correction current, and a primary biasing circuit configured to generate a bias current for the power amplifier based at least partly on the correction current." (*Id.* at 1:48-58.) According to the '563 patent, such a power amplifier system "correct[s] for a variation in gain of the power amplifier when the power amplifier is enabled" (*id.* at 1:58-60), which "can improve the power amplifier's performance" (*id.* at 4:52-55). Additionally, the '563 patent describes techniques to arrange the components of its inventive power amplifier system in a way that can allow "the magnitude of the components of the time-dependent signal generator [to] be reduced to a size suitable for on-chip integration." (*Id.* at 9:1-7.)

iii) *The '579 Patent*

41. The '579 patent, entitled "Radio frequency devices having reduced intermodulation distortion," was duly and legally issued on September 20, 2016, and has been in full force and effect since its issuance.[3] A true and correct copy of the '579 patent is attached hereto as Exhibit 8.

42. Skyworks owns all rights to the '579 patent, including the full and exclusive right to enforce the patent and seek all legal and equitable remedies for infringement thereof.

43. The '579 patent relates generally to "a radio-frequency (RF) switch system" designed to reduce signal interference. (Ex. 8 ['579 patent] at 1:34-37.)

---

[3] The '579 patent is a division of application No. 13/936,175, filed on July 6, 2013, which issued as U.S. Patent No. 9,148,194.

44.    The '579 patent explains that "mixing products from other RF signals" can cause "an unwanted signal [to be] added to a desired signal" and that "[s]uch an effect can be particularly dominant in a multi-mode, multi-band environment." (*Id.* at 9:2-5.)    The '579 patent refers to the unwanted signal as "intermodulation distortion" or "IMD" and notes that it can "yield frequencies that are not harmonic frequencies." (*Id.* at 9:5-7.)    The '579 patent explains that this is problematic because it "can contribute to the introduction of spurious signals into the RF system, thereby contributing to degradation of overall RF system linearity and IMD performance." (*Id.* at 6:49-53.)

45.    The '579 patent addresses this problem, for example, through an RF device designed to reduce IMD. (*Id.* at Abstract.)    The RF device may contain an RF switch system that "includes a switch having a stack of field-effect transistors (FETs) connected in series between first and second nodes" (*id.* at 1:34-37) and "a capacitor connected in series with the switch configured to inhibit a low-frequency blocker system from mixing with a fundamental-frequency signal in the switch" (*id.* at 1:37-40).    According to the '579 patent, this system can allow for "a low-frequency jammer signal [to] be blocked or reduced from mixing with any ON or OFF paths" (*id.* at 9:49-53), which can improve the "linearity of the system building blocks," leading to a decrease in "the overall susceptibility of a system to interference" (*id.* at 9:9-14).

iv)    *The '194 Patent*

46.    The '194 patent, entitled "Radio-frequency switch system having improved intermodulation distortion performance," was duly and legally issued on September 29, 2015, and has been in full force and effect since its issuance.    A true and correct copy of the '194 patent is attached hereto as Exhibit 9.

47.    Skyworks owns all rights to the '194 patent, including the full and exclusive right to enforce the patent and seek all legal and equitable remedies for infringement thereof.

48.   The '194 patent relates generally to "a radio-frequency (RF) switch system" designed to reduce signal interference.  (Ex. 9 ['194 patent] at 1:31-37.)

49.   The '194 patent explains that "mixing products from other RF signals" can cause "an unwanted signal [to be] added to a desired signal" and that "[s]uch an effect can be particularly dominant in a multi-mode, multi-band environment."  (*Id.* at 8:55-60.)  The '194 patent refers to the unwanted signal as "intermodulation distortion" or "IMD" and notes that it can "yield frequencies that are not harmonic frequencies."  (*Id.*)  The '194 patent explains that this is problematic because it "can contribute to the introduction of spurious signals into the RF system, thereby contributing to degradation of overall RF system linearity and IMD performance."  (*Id.* at 6:38-44.)

50.   The '194 patent addresses this problem through, for example, an RF device designed to reduce IMD.  (*Id.* at Abstract.)  The RF device may contain an RF switch system that "includes a switch having a stack of field-effect transistors (FETs) connected in series between first and second nodes" (*id.* at 1:31-34) and "a capacitor connected in series with the switch and configured to inhibit a low-frequency blocker signal from mixing with a fundamental-frequency signal in the switch" (*id.* at 1:34-37).  According to the '194 patent, this system can allow for "a low-frequency jammer signal [to] be blocked or reduced from mixing with any ON or OFF paths," which can "lead to improvement in IMD performance, especially for low-frequency blocker signals."  (*Id.* at 9:35-38.)

51.   As set forth below, KCT's Wi-Fi FEMs infringe the foregoing Asserted Patents.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,717,101

52.   Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint, as if fully set forth herein.

53.   The '101 patent is valid and enforceable under the United States Patent Laws.

54.     In violation of 35 U.S.C. § 271, KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '101 patent by making, using, offering for sale, selling, or importing infringing Wi-Fi 6, 6E and 7 FEMs, including, but not limited to, the KCT8547HE, KCT8539S, KCT8239S, and KCT8576HE Wi-Fi FEMs (the "Accused KCT Products").[4]

55.     The Accused KCT Products infringe at least claims 1, 2, 10-11, 17, 18, 20, 21, and 22 of the '101 patent.

56.     For instance, the Accused KCT Products infringe independent claims 1, 17, and 21 of the '101 patent for at least the reasons described in Skyworks' exemplary infringement charts set forth as Exhibits 10-13.

57.     With respect to claims 2 and 22, the Accused KCT Products further contain a resistor-capacitor (RC) network in a time-dependent signal generator. Thus, the Accused KCT Products infringe claims 2 and 22 of the '101 patent.

58.     With respect to claim 10, the Accused KCT Products further contain a bipolar transistor in a power amplifier.  The bipolar transistor has an emitter, a base, and a collector, the base configured to receive a radio frequency (RF) signal and a bias current.  Thus, the Accused KCT Products infringe claim 10 of the '101 patent.

59.     With respect to claim 11, the bipolar transistor contained in Accused KCT Products has an emitter electrically connected to a power low voltage.  The bipolar transistor has a collector configured to generate an amplified version of the RF signal.  Thus, the Accused KCT Products infringe claim 11 of the '101 patent.

60.     With respect to claim 18, the Accused KCT Products further use a resistor-capacitor (RC) network of a time-dependent signal generator.  Thus, the Accused KCT Products infringe claim 18 of the '101 patent.

---

[4] Skyworks' infringement allegations regarding the '101 patent extend to all KCT Wi-Fi FEMs embodying an infringing power amplifier system, including KCT Wi-Fi 6, 6E, and 7 FEMs.

61.    With respect to claim 20, when generating a bias current, the Accused KCT Products further shape the bias current so as to compensate for a gain variation of a transistor.  On information and belief, the transistor is a heterojunction bipolar transistor (HBT).  Thus, the Accused KCT Products infringe claim 20 of the '101 patent.

62.    KCT has had knowledge of the '101 patent at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4 GHz and 5 GHz Wi-Fi FEMs infringed the claims of certain Skyworks patents, including (but not limited to) the '101 patent family, and including without limitation U.S. Patent Nos. 9,136,803, 9,667,203, 9,917,563, and 10,566,943.  (Ex. 14 [2023 Notice Letter] at 1-2.)  Skyworks met with KCT and gave a presentation outlining KCT's infringement.  Skyworks further sent a letter to KCT on April 23, 2024, providing notice of KCT's infringement of each Asserted Patent, including the '101 patent. (Ex. 15 [2024 KCT Notice Letter].)  Despite receiving notice of its infringement, KCT has continued to infringe Skyworks' patented technology, including the technology claimed in the '101 patent, and made no effort to avoid infringement. These actions demonstrate KCT's willful, blatant, and egregious disregard for Skyworks' patent rights.

63.    On information and belief, KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '101 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States.  For example, KCT's website advertises the Accused KCT Products as integrating "a high-efficiency high-linearity power amplifier (PA)" that includes a "power detector" for "accurately monitoring [] output power from the

[power amplifier]." (KXComTech, *KCT8547HE-1*, [https://perma.cc/7QFB-L3FW]; KXComTech, *KCT8539S*, [https://perma.cc/WRA7-GDPD]; KXComTech, *KCT8576HE*, [https://perma.cc/A72U-RFMF]); *see also* KXComTech, *KCT8239S*, [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which incorporates key RF functionality," which is "integrated with a high-efficiency power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated matching network and a single-pole, double-throw (SPDT) switch all in one device").) Further, KCT advertises the Accused KCT Products as being pin-to-pin compatible with Skyworks' products. For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product. (Ex. 4 [KCT Product Roadmap Presentation] at 13.) On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KCT's distributors, customers, and end users directly infringe the '101 patent by, for example, making, using, offering to sell, and/or selling within the United States, and importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

64. KCT also contributes to infringement of the '101 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '101 patent. These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '101 patent. Specifically, on information and belief, KCT sells the Accused KCT

Products to resellers, retailers, and end product manufacturers with knowledge that such entities perform acts of direct infringement with the Accused KCT Products. On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KCT's distributors, customers, and end users directly infringe the '101 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

65.    As a result of KCT's infringement of the '101 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount to be proven at trial, and in no event less than a reasonable royalty for the use made of the invention by KCT, together with interest and costs as fixed by the Court.

66.    In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

67.    On information and belief, KCT's infringement of the '101 patent has been and continues to be willful. For the reasons stated above, KCT has had knowledge of the '101 patent and its infringement of the '101 patent since at least March 7, 2023. Nevertheless, KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, KCT's infringing actions have been and continue to be consciously willful.

68.    Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because

of KCT's copying of the '101 patent in the Accused KCT Products—which warrants an award of attorneys' fees to Skyworks pursuant to 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,917,563

69.    Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint, as if fully set forth herein.

70.    The '563 patent is valid and enforceable under the United States Patent Laws.

71.    In violation of 35 U.S.C. § 271, KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '563 patent by making, using, offering for sale, selling, or importing Wi-Fi 6, 6E and 7 FEMs that infringe the '563 patent, including but not limited to the Accused KCT Products.[5]

72.    The Accused KCT Products infringe at least claims 14, 15, 17, and 20 of the '563 patent.

73.    For instance, the Accused KCT Products infringe independent claim 14 of the '563 patent for at least reasons described in Skyworks' exemplary infringement charts set forth as Exhibits 16-19.

74.    With respect to claim 15, the Accused KCT Products further contain a first transistor in a primary bias circuit.  The Accused KCT Products' correction current, as identified in the exemplary infringement charts for claim 14 (Exs. 16-19), is configured to change a current flowing through the first transistor.  Thus, the Accused KCT Products infringe claim 15 of the '563 patent.

75.    With respect to claim 17, the Accused KCT Products further contain a current mirror in a gain correction circuit.  The current mirror is configured to generate the correction current by mirroring the control current as in claim 14.  The

---

[5] Skyworks' infringement allegations regarding the '563 patent extend to all KCT Wi-Fi FEMs embodying an infringing power amplifier system, including KCT Wi-Fi 6, 6E, and 7 certified FEMs.

current mirror is further configured to receive a power amplifier enable signal. Thus, the Accused KCT Products infringe claim 17 of the '563 patent.

76.    With respect to claim 20, the Accused KCT Products further contain a second transistor in a primary bias circuit. The second transistor is electrically coupled to the first transistor as in claim 15. The second transistor is further configured to provide a bias signal to a power amplifier. Thus, the Accused KCT Products infringe claim 20 of the '563 patent.

77.    KCT has had knowledge of the '563 patent at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4 GHz and 5 GHz Wi-Fi FEMs infringed the claims of certain Skyworks patents, including (but not limited to), the '563 patent. (Ex. 14 [2023 Notice Letter] at 1-2.) Skyworks met with KCT and gave a presentation outlining KCT's infringement. Skyworks further sent a letter to KCT on April 23, 2024, providing notice of KCT's infringement of each Asserted Patent, including the '563 patent. (Ex. 15 [2024 KCT Notice Letter].) Despite receiving notice of its infringement, KCT has continued to infringe Skyworks' patented technology, including the technology claimed in the '563 patent, and made no effort to avoid infringement. These actions demonstrate KCT's willful, blatant, and egregious disregard for Skyworks' patent rights.

78.    On information and belief, KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '563 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States. For example, KCT's website advertises the Accused KCT Products as integrating "a high-efficiency high-linearity power amplifier (PA)" that includes a "power detector" for "accurately monitoring [] output power from the

[power amplifier]." (KXComTech, *KCT8547HE-1*, [https://perma.cc/7QFB-L3FW]; KXComTech, *KCT8539S*, [https://perma.cc/WRA7-GDPD]; KXComTech, *KCT8576HE*, [https://perma.cc/A72U-RFMF]); *see also* KXComTech, *KCT8239S*, [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which incorporates key RF functionality," which is "integrated with a high-efficiency power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated matching network and a single-pole, double-throw (SPDT) switch all in one device").) Further, KCT advertises the Accused KCT Products as being pin-to-pin compatible with Skyworks' products. For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product. (Ex. 4 [KCT Product Roadmap Presentation] at 13.) On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KCT's distributors, customers, and end users directly infringe the '563 patent by, for example, making, using, offering to sell, and/or selling within the United States, and importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

79.    KCT also contributes to infringement of the '563 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '563 patent. These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '563 patent. Specifically, on information and belief, KCT sells the Accused KCT

Products to resellers, retailers, and end product manufacturers with knowledge that such entities perform acts of direct infringement with the Accused KCT Products. On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KCT's distributors, customers, and end users directly infringe the '563 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

80.     As a result of KCT's infringement of the '563 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount to be proven at trial, and in no event less than a reasonable royalty for the use made of the invention by KCT, together with interest and costs as fixed by the Court.

81.     In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

82.     On information and belief, KCT's infringement of the '563 patent has been and continues to be willful. For the reasons stated above, KCT has had knowledge of the '563 patent and its infringement of the '563 patent since at least March 7, 2023. Nevertheless, KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, KCT's infringing actions have been and continue to be consciously willful.

83.     Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because

of KCT's copying of the '563 patent in the Accused KCT Products—which warrants an award of attorneys' fees to Skyworks pursuant to 35 U.S.C. § 285.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,450,579

84.    Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint, as if fully set forth herein.

85.    The '579 patent is valid and enforceable under the United States Patent Laws.

86.    In violation of 35 U.S.C. § 271, KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '579 patent by making, using, offering for sale, selling, or importing Wi-Fi 6, 6E and 7 FEMs that practice the '579 patent, including but not limited to the Accused KCT Products.[6]

87.    The Accused KCT Products infringe at least claims 1 and 7 of the '579 patent.

88.    For instance, the Accused KCT Products infringe independent claims 1 and 7 of the '579 patent for at least the reasons described in Skyworks' exemplary infringement charts set forth as Exhibits 20-23.

89.    KCT has had knowledge of the '579 patent and its infringement of the '579 patent at least since April 23, 2024, when Skyworks sent a letter to KCT providing notice of KCT's infringement of each Asserted Patent, including the '579 patent.  (Ex. 15 [2024 KCT Notice Letter].)  Even before April 23, 2024, KCT was, at a minimum, willfully blind to its infringement of the '579 patent.  For instance, KCT touts that "most of [its] R&D team[]" had prior overseas industry experience before being hired to work at KCT, including at Skyworks.  (Ex. 2 [KCT Press Release] ("Most of the R&D teams … have overseas work experience [at] RFaxis

---

[6] Skyworks' infringement allegations regarding the '579 patent extend to all KCT Wi-Fi FEMs embodying an infringing RF switch system, including KCT Wi-Fi 6, 6E, and 7 certified FEMs.

(acquired by Skyworks in 2016), RFMD (merged into Qorvo), Anadigics and other internationally renowned RF front-end chip companies[.]").)  KCT also touts that the products developed by this team of engineers—a team comprised of engineers who, on information and belief, were formerly employed by Skyworks or Skyworks affiliates—are "pin-to-pin" copies of Skyworks' Wi-Fi FEM chips (Ex. 4 [KCT Product Roadmap Presentation] at 15), and allegedly are comparable "in terms of linearity, efficiency, noise figure, and other performance metrics" (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6]).  At the same time, KCT has been aware that Skyworks **patented** the technologies contained in its Wi-Fi FEM products, and that KCT's "pin-to-pin" copies infringed these patents, at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4GHz and 5 GHz Wi-Fi FEMs infringed.  (Ex. 14 [2023 Notice Letter] at 1-2.) Indeed, Skyworks even met with KCT and gave a presentation outlining KCT's infringement.  Under the circumstances present here, KCT knew or should have known of the high probability that it infringed Skyworks' patented technologies, including the '579 patent, by making, using, selling, offering for sale, and importing its own pin-to-pin compatible Wi-Fi FEM chips.

90.    On information and belief, KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '579 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States.  For example, KCT's website advertises the Accused KCT Products as integrating "a high-efficiency high-linearity power amplifier (PA)" that includes a "power detector" for "accurately monitoring [] output power from the [power amplifier]."  (KXComTech, *KCT8547HE-1*, [https://perma.cc/7QFB-

L3FW]; KXComTech, *KCT8539S*, [https://perma.cc/WRA7-GDPD]; KXComTech, *KCT8576HE*, [https://perma.cc/A72U-RFMF]); *see also* KXComTech, *KCT8239S*, [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which incorporates key RF functionality," which is "integrated with a high-efficiency power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated matching network and a single-pole, double-throw (SPDT) switch all in one device").)  Further, KCT advertises the Accused KCT Products as being pin-to-pin compatible with Skyworks' products.   For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product.  (Ex. 4 [KCT Product Roadmap Presentation] at 13.)  On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)  On information and belief, KCT's distributors, customers, and end users directly infringe the '579 patent by, for example, making, using, offering to sell, and/or selling within the United States, and importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

91.    KCT also contributes to infringement of the '579 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '579 patent.  These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '579 patent.  Specifically, on information and belief, KCT sells the Accused KCT Products to resellers, retailers, and end product manufacturers with knowledge that

such entities perform acts of direct infringement with the Accused KCT Products. On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)  On information and belief, KCT's distributors, customers, and end users directly infringe the '579 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

92.    As a result of KCT's infringement of the '579 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount to be proven at trial, and in no event less than a reasonable royalty for the use made of the invention by KCT, together with interest and costs as fixed by the Court.

93.    In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

94.    On information and belief, KCT's infringement of the '579 patent has been and continues to be willful.  For the reasons stated above, KCT has had knowledge of the '579 patent and its infringement of the '579 patent since at least April 23, 2024.  Nevertheless, KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.  Thus, KCT's infringing actions have been and continue to be consciously willful.

95.    Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of KCT's copying of the '579 patent in the Accused KCT Products—which warrants an award of attorneys' fees to Skyworks pursuant to 35 U.S.C. § 285.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,148,194

96.     Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint, as if fully set forth herein.

97.     The '194 patent is valid and enforceable under the United States Patent Laws.

98.     In violation of 35 U.S.C. § 271, KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '194 patent by making, using, offering for sale, selling, or importing Wi-Fi 6, 6E and 7 FEMs that practice the '194 patent, including but not limited to the Accused KCT Products).[7]

99.     The Accused KCT Products infringe at least claim 4 of the '194 patent for at least the reasons described in Skyworks' exemplary infringement charts set forth as Exhibits 24-27.

100.     KCT has had knowledge of the '194 patent and its infringement of the '194 patent at least since April 23, 2024, when Skyworks sent a letter to KCT providing notice of KCT's infringement of each Asserted Patent, including the '579 patent.  (Ex. 15 [2024 KCT Notice Letter].)  Even before April 23, 2024, KCT was, at a minimum, willfully blind to its infringement of the '194 patent.  For instance, KCT touts that "most of [its] R&D team[]" had prior overseas industry experience before being hired to work at KCT, including at Skyworks.  (Ex. 2 [KCT Press Release] ("Most of the R&D teams … have overseas work experience [at] RFaxis (acquired by Skyworks in 2016), RFMD (merged into Qorvo), Anadigics and other internationally renowned RF front-end chip companies[.]").)  KCT also touts that the products developed by this team of engineers—comprised at least in part of engineers who, on information and belief, were formerly employed by Skyworks or

---

[7] Skyworks' infringement allegations regarding the '194 patent extend to all KCT Wi-Fi FEMs embodying an infringing RF switch system, including KCT Wi-Fi 6, 6E, and 7 certified FEMs.

Skyworks affiliates—are "pin-to-pin" copies of Skyworks' Wi-Fi FEM chips (Ex. 4 [KCT Product Roadmap Presentation] at 15), and allegedly are comparable "in terms of linearity, efficiency, noise figure, and other performance metrics" (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6]).  At the same time, KCT has been aware that Skyworks **patented** the technologies contained in its Wi-Fi FEM products, and that KCT's "pin-to-pin" copies infringed these patents, at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4GHz and 5 GHz Wi-Fi FEMs infringed other patents in Skyworks' portfolio. (Ex. 14 [2023 Notice Letter] at 1-2.)  Indeed, Skyworks even met with KCT and gave a presentation outlining KCT's infringement.  Under the circumstances present here, KCT knew or should have known of the high probability that it infringed Skyworks' patented technologies, including the '194 patent, by making, using, selling, offering for sale, and importing its own pin-to-pin compatible Wi-Fi FEM chips.

101.   On information and belief, KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '194 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States.  For example, KCT's website advertises the Accused KCT Products as integrating "a high-efficiency high-linearity power amplifier (PA)" that includes a "power detector" for "accurately monitoring [] output power from the [power amplifier]."  (KXComTech, *KCT8547HE-1*, [https://perma.cc/7QFB-L3FW]; KXComTech, *KCT8539S*, [https://perma.cc/WRA7-GDPD]; KXComTech, *KCT8576HE*, [https://perma.cc/A72U-RFMF]); *see also* KXComTech, *KCT8239S*, [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully

integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which incorporates key RF functionality," which is "integrated with a high-efficiency power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated matching network and a single-pole, double-throw (SPDT) switch all in one device").) Further, KCT advertises the Accused KCT Products as being pin-to-pin compatible with Skyworks' products. For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product. (Ex. 4 [KCT Product Roadmap Presentation] at 13.) On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakman. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KCT's distributors, customers, and end users directly infringe the '194 patent by, for example, making, using, offering to sell, and/or selling within the United States, and importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

102.  KCT also contributes to infringement of the '194 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '194 patent. These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '194 patent. Specifically, on information and belief, KCT sells the Accused KCT Products to resellers, retailers, and end product manufacturers with knowledge that such entities perform acts of direct infringement with the Accused KCT Products. On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like

Disman Bakman.   (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)   On information and belief, KCT's distributors, customers, and end users directly infringe the '194 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

103.   As a result of KCT's infringement of the '194 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount to be proven at trial, and in no event less than a reasonable royalty for the use made of the invention by KCT, together with interest and costs as fixed by the Court.

104.   In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

105.   On information and belief, KCT's infringement of the '194 patent has been and continues to be willful.  For the reasons stated above, KCT has had knowledge of the '194 patent and its infringement of the '194 patent since at least April 23, 2024.  Nevertheless, KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.   Thus, KCT's infringing actions have been and continue to be consciously willful.

106.   Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of KCT's copying of the '194 patent in the Accused KCT Products—which warrants an award of attorneys' fees to Skyworks pursuant to 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Skyworks respectfully requests that this Court enter judgment in its favor as follows and award Skyworks the following relief:

a) A judgment that KCT has infringed at least one or more claims of the Asserted Patents, directly and/or indirectly, literally and/or under the doctrine of equivalents;

b) An award of damages sufficient to compensate Skyworks for KCT's infringement under 35 U.S.C. § 284;

c) An adjudication that KCT's infringement has been willful and deliberate, and an award to Skyworks of treble damages and pre-judgment interest under 35 U.S.C. § 284;

d) An adjudication that this case is exceptional under 35 U.S.C. § 285, and an award to Skyworks of its reasonable attorneys' fees;

e) An award to Skyworks of its costs and expenses in this action;

f) A permanent injunction restraining and enjoining KCT and its officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, attorneys, and all others in active concert or participation with any of the foregoing, from directly or indirectly infringing the Asserted Patents;

g) Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1 of this Court, Skyworks hereby demands a trial by jury as to all issues so triable.

Dated: May 6, 2024

Respectfully Submitted,

**SKYWORKS SOLUTIONS, INC.**

By: */s/  James M. Dowd*

James M. Dowd (SBN 211280)
*james.dowd@wilmerhale.com*
Derek A. Gosma (SBN 274515)
*derek.gosma@wilmerhale.com*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Tel: +1 213 443 5300

Joseph F. Haag (SBN 248749)
*joseph.haag@wilmerhale.com*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: +1 650 858 6000

Kate Saxton (*Pro Hac Vice Application Pending*)
*Kate.Saxton@wilmerhale.com*
George F. Manley (*Pro Hac Vice Application Pending*)
*George.Manley@wilmerhale.com*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: +1 617 526 6000

*Attorneys for Plaintiff Skyworks Solutions, Inc.*