James M. Dowd (SBN 211280)
*james.dowd@wilmerhale.com*
Derek A. Gosma (SBN 274515)
*derek.gosma@wilmerhale.com*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Tel: +1 213 443 5300

Joseph F. Haag (SBN 248749)
*joseph.haag@wilmerhale.com*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: +1 650 858 6000

Kate Saxton (*Admitted Pro Hac Vice*)
*Kate.Saxton@wilmerhale.com*
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: +1 617 526 6000

*Attorneys for Plaintiff Skyworks Solutions, Inc.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| SKYWORKS SOLUTIONS, INC. <br><br> Plaintiff, <br><br> v. <br><br> KANGXI COMMUNICATION TECHNOLOGIES (SHANGHAI) CO., LTD., GRAND CHIP LABS, INC., D-LINK CORPORATION, D-LINK SYSTEMS, INC., AND RUIJIE NETWORKS CO., LTD. <br><br> Defendants. | **CASE NUMBER: 8:24-CV-00974-FWS-ADS** <br><br> **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1.      Plaintiff Skyworks Solutions, Inc. ("Skyworks") brings this First Amended Complaint for Patent Infringement in the Central District of California (the "District") against Defendants Kangxi Communication Technologies (Shanghai) Co., Ltd., ("KXComTech") and Grand Chip Labs, Inc. ("GCLI") (collectively, "KCT" or the "KCT Defendants"); D-Link Corporation and D-Link Systems, Inc. (collectively, "D-Link" or the "D-Link Defendants"); and Ruijie Networks Co., Ltd. ("Ruijie") for infringement of United States Patent Nos. 8,717,101 (the "'101 patent"), 9,917,563 (the "'563 patent"), 9,450,579 (the "'579 patent"), and 9,148,194 (the "'194 patent") (collectively, the "Asserted Patents").

**THE PARTIES**

**A.      Skyworks**

2.      Skyworks is a Delaware Corporation with its principal place of business at 5260 California Avenue, Irvine, California 92617.  Skyworks is renowned in the wireless semiconductor industry for its innovative approach to radio frequency and semiconductor system design.  It is a worldwide leader in the wireless front-end-module ("FEM") industry based in part on the success of its strong and long-standing investments in research and development right here in California and throughout the United States.  As discussed further below, a wireless system's FEM is typically located adjacent to the system's antenna and comprises, for example, radio frequency signal conditioning elements that operate in the analog domain, such as amplification, switching, and/or filtering elements.  Skyworks provides innovative wireless FEM chips that are used in a wide array of products that play critical roles in the U.S. economy, including in enabling reliable connectivity for the network of wireless devices that power today's economy and infrastructure.

3.      Skyworks' technology enables everything from daily essentials like smartphones, computers, and Internet of Things (IoT) devices to societal necessities like lifesaving patient telemetry in hospitals, advanced security systems, and

industrial automation.  Skyworks' technology also serves the aerospace and national defense sectors, among others.

4.    As one of the largest producers of wireless FEMs in the world (Dkt. 1-1 [Mordor Intelligence Report] at 4), Skyworks is committed to developing innovative solutions to meet the ever-evolving demands for wireless communication across many industries.  To that end, Skyworks spent more than $606 million on research and development in 2023 alone, for example, and it has been awarded more than 4,600 patents worldwide in recognition of its pioneering innovations. (Skyworks Solutions, Inc., *2023 Annual Report*, [https://perma.cc/Y23Q-J8TG] at 140.)

5.    Skyworks employs thousands of scientists, engineers, and other personnel in the United States, including at its numerous facilities right here in California.

## B.    The KCT Defendants

6.    Defendant KXComTech is a corporation organized under the laws of China, with its principal place of business located at 5th Floor, Building 10, No.399 Keyuan Road, Pudong New Area, Shanghai, China.

7.    Established in 2014, KXComTech offers multiple wireless FEM products that infringe the Asserted Patents, including products compatible with at least the sixth generation (802.11ax or "Wi-Fi 6"), sixth generation extended ("Wi-Fi 6E"),[1] or the seventh generation (802.11b3 or "Wi-Fi 7") protocols, among others.[2]  According to its website, KXComTech was "founded by seasoned experts with global experience[] in the field of RF chip design, application, production, and sales" and operates with a mission to "provide wireless devices with faster speed,

---

[1] WI-Fi 6E expanded on the pre-existing Wi-Fi 6 standard by enabling access to a 6 GHz band.
[2] Although KCT markets its accused wireless FEM products as compatible with certain standards (like Wi-Fi 6, 6E, and 7), Skyworks' Asserted Patents have not been declared standards-essential and are not subject to any FRAND obligations.

lower latency, higher capacity and wider coverage for more complex and diversified network access scenarios." (KXComTech, *About Us*, [https://perma.cc/ST82-V7TA].) KXComTech has stated publicly that "most of [its] R&D teams" have "overseas work experience" at American semiconductor companies, like Skyworks. (Dkt. 1-2 [KCT Press Release] ("Most of the R&D teams … have overseas work experience in RFaxis (acquired by Skyworks in 2016), RFMD (merged into Qorvo), Anadigics and other internationally renowned RF front-end chip companies[.]").)

8.    KXComTech purports to work with distributors to sell its products in the United States, China, and Taiwan. (KXComTech, *Distributors*, [https://perma.cc/39JG-J7Y6].) It also sells its products directly in all three markets. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

9.    On November 17, 2023, KXComTech was officially listed on the Shanghai Stock Exchange's Science and Technology Innovation Board. (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6].) According to its public offering filings, KXComTech employs 156 people, has a market capitalization of $1.24 billion, and an enterprise value of $1.16 billion.

10.    GCLI is a corporation organized under Nevada law and domiciled in California with a principal place of business at 14151 Newport Ave., Suite 204, Tustin, CA 92780. (Dkt. 1-3 [GCLI California Corporation Registration].) GCLI is a wholly owned subsidiary of KXComTech. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

11.    On information and belief, GCLI is directly controlled by KXComTech and handles business development and sales of wireless FEM products in the United States for KXComTech.

12.    KCT has recently announced its intent to attempt to displace Skyworks in the market for wireless FEM chips. (Wi-Fi Now, *Meet KXcomtech: On track to ship hundreds of millions in Wi-Fi FEMs in 2022*, [https://perma.cc/R3R7-5B47].) For instance, KCT has marketed its products as pin-for-pin replacements for

Skyworks' products (*see*, *e.g.*, Dkt 1-4 [KCT Product Roadmap Presentation] at 8-24), has set up its United States sales and marketing subsidiary (GCLI) ten miles from Skyworks' corporate headquarters, and has targeted Skyworks' current and former customers—such as D-Link and Ruijie—including by directly comparing its products to Skyworks' products "in terms of linearity, efficiency, noise figure, and other performance metrics" (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6]).    KCT has engaged in this conduct despite knowledge of Skyworks' patent portfolio generally and the Asserted Patents in particular.  On information and belief, the KCT wireless FEMs used in D-Link's and Ruijie's products copy Skyworks' technology, including the technology covered by the Asserted Patents.

### C.    The D-Link Defendants

13.    D-Link Corporation is a corporation organized under the laws of Taiwan with a principal place of business at 4F 289 Sinhu 3rd Road, Neihu District, Taipei, 114 Taiwan.

14.    D-Link Systems Inc. is a corporation organized under California law with a principal place of business at 14420 Myford Road, Suite 100, Irvine, CA 92606.  (Ex. 1 [D-Link Systems Inc. California Corporation Registration]).  D-Link Systems Inc. is a wholly owned subsidiary of D-Link Corporation.  (D-Link Corporation, *2023 Annual Report*, [https://perma.cc/9QWC-HUSZ] at 148.)

15.    Originally established in Taiwan in 1986 as Datex System, Inc. to market network adapters, D-Link is now a multinational designer, manufacturer, and seller of products ranging from surveillance cameras to whole home Wi-Fi systems. D-Link sells its products worldwide, including in the U.S. where it made more than $37 million in sales in 2023 alone.  (*Id.* at 167.)  On information and belief, these sales are made both directly and through third-party distributors.

16.    D-Link's Wi-Fi routers and other products utilize wireless FEMs.  D-Link has historically purchased these wireless FEMs from Skyworks but has recently

started shipping products that contain KCT wireless FEMs that KCT advertises as pin-for-pin compatible with Skyworks' products. (*See, e.g.*, Dkt. 1-4 [KCT Product Roadmap Presentation] at 8-24.) On information and belief, the KCT wireless FEMs used in D-Link's products directly copy Skyworks' technology, including the technology covered by the Asserted Patents.

### D.  **Ruijie**

17.    Ruijie is a corporation organized under the laws of China with a principal place of business at Building 19, Juyuanzhou Industrial Park, No. 618 Jinshan Road, Cangshan District, Fuzhou, Fujian, China.

18.    Founded in 2003, Ruijie is a network infrastructure and solution provider that produces and sells network equipment, network security products, and cloud desktop solutions, among other products. Ruijie has stated publicly that it "serves energy and electric power, government, entertainment and hospitality, telecommunications, healthcare, transportations, finance, Internet, exhibition, education, and enterprise industries." (Yahoo! Finance, *Ruijie Networks Co., Ltd. (301165.SZ)*, [https://perma.cc/B7J4-YH8V].) Ruijie reported sales of more than 11.25 billion Chinese Yuan (approximately $1.55 billion) in 2022 alone. (Wall Street Journal, *Ruijie Networks Co. Ltd. A*, [https://perma.cc/5TV4-VRTN].) On information and belief, these sales are made both directly and through third-party distributors.

19.    Ruijie's Wi-Fi routers and other products utilize wireless FEMs. Ruijie has historically purchased these wireless FEMs from Skyworks but has recently started shipping products that contain KCT wireless FEMs that KCT advertises as pin-for-pin compatible with Skyworks' products. (*See, e.g.*, Dkt. 1-4 [KCT Product Roadmap Presentation] at 8-24.) On information and belief, the KCT wireless FEMs used in Ruijie's products directly copy Skyworks' technology, including the technology covered by the Asserted Patents.

### JURISDICTION AND VENUE

20.    This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

21.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

A.    **The KCT Defendants**

   i)    *KXComTech*

22.    KXComTech is subject to this Court's specific and general personal jurisdiction due at least to its substantial business in this State and District, including by regularly doing or soliciting business, engaging in other persistent conduct targeting residents of California and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported vicariously through and/or in concert with its related entities, alter egos, intermediaries, agents, distributors, partners, subsidiaries, clients, customers, affiliates, and/or consumers.

23.    For instance, GCLI is responsible for selling KXComTech's products to customers in the United States and for developing KXComTech's business in U.S. markets.  GCLI is 100% owned by KXComTech (Wi-Fi Now, *David L. Recker*, [https://perma.cc/AJT7-MDWU] (identifying GCLI as a "[w]holly owned US subsidiary of KXcomtech")), and KXComTech's chairman, Dr. Ping Peng, is GCLI's corporate president, treasurer, and sole director (Dkt. 1-5 [GCLI Corporate Registration]).  GCLI is registered to do business in California and maintains its principal place of business in this District located at 14151 Newport Ave., Suite 204, Tustin.  (Dkt. 1-3 [GCLI California Corporation Registration].)

24.    On information and belief, KXComTech also directs and authorizes the sale and distribution of infringing products in California, including in this District. For instance, KXComTech's website lists an individual employed by GCLI as its General Representative of North America for sales.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)    Further, KXComTech's website lists Disman

Bakner as its United States distributor for the California market. (KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) On information and belief, KXComTech directs and authorizes both GCLI and Disman Bakner to distribute infringing products in California.

25. Venue is proper in this District as to KXComTech because it is a foreign corporation organized under the laws of China, with a principal place of business in Shanghai, China. Because KXComTech is not a resident of the United States, it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

           ii)   *GCLI*

26. This Court has personal jurisdiction over GCLI because it is domiciled in California and lists its principal place of business in California. (Dkt. 1-3 [GCLI California Corporation Registration].)

27. This Court also has personal jurisdiction over GCLI because it regularly transacts business in this District by, among other things, offering infringing products to customers, business affiliates, and partners located in the District. For instance, an individual employed by GCLI is listed on KXComTech's website as KXComTech's General Representative of North America for sales. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ].)

28. Venue is proper in this District as to GCLI pursuant to at least 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(2), 1391(d), and 1400(b) because GCLI is subject to personal jurisdiction in this District, has a regular and established place of business in this District, and has committed acts of infringement in this District. For example, GCLI lists its principal place of business as 14151 Newport Ave., Suite 204, Tustin, CA 92780, which is located in this District less than five miles from the Ronald Reagan Federal Building and United States Courthouse. (Dkt. 1-3 [GCLI California Corporation Registration].)

**B.**    **The D-Link Defendants**

           i)   *D-Link Corporation*

29.    D-Link Corporation is subject to this Court's specific and general personal jurisdiction due at least to its substantial business in this State and District, including by regularly doing or soliciting business, engaging in other persistent conduct targeting residents of California and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported vicariously through and/or in concert with its related entities, alter egos, intermediaries, agents, distributors, partners, subsidiaries, clients, customers, affiliates, and/or consumers.

30.    For instance, D-Link Systems, Inc. is responsible for selling D-Link Corporation's products in the United States.  D-Link Systems, Inc. is 100% owned by D-Link Corporation.  (D-Link Corporation*, 2023 Annual Report*, [https://perma.cc/9QWC-HUSZ] at 148.)  D-Link Systems, Inc. is registered to do business in California and has a corporate office in this District located at 14420 Myford Road, #100, Irvine, CA 92606.  (Ex. 1 [D-Link Systems, Inc. California Corporation Registration].)

31.    Venue is proper in this District as to D-Link Corporation because it is a foreign corporation organized under the laws of Taiwan, with a principal place of business in Taiwan.  Since D-Link Corporation is not a resident of the United States it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

ii)    *D-Link Systems, Inc.*

32.    This Court has personal jurisdiction over D-Link Systems, Inc. because it is domiciled in California and lists its principal place of business in California.  (Ex. 1 [D-Link Systems, Inc. California Corporation Registration].)

33.    This Court also has personal jurisdiction over D-Link Systems, Inc. because it regularly transacts business in this District by, among other things, offering infringing products to customers, business affiliates, and partners located in the District.

34.    Venue is proper in this District as to D-Link Systems, Inc. pursuant to at least 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(2), 1391(d), and 1400(b)

1    because D-Link Systems, Inc. is subject to personal jurisdiction in this District, has

2    a regular and established place of business in this District, and has committed acts

3    of infringement in this District.

4         35.    For example, D-Link Systems, Inc. lists its principal place of business

5    as 14420 Myford Road, #100, Irvine, CA 92606.  (Ex. 1 [D-Link Systems, Inc.

6    California Corporation Registration].)  Further, since 2019, D-Link Systems, Inc.

7    has received 350 shipments of products—including, on information and belief,

8    products that infringe the Asserted Patents—at the Port of Los Angeles, which is

9    located in this District.  (ImportInfo, *D-Link Systems, Inc.*, [https://perma.cc/WDL3-

10   B72B].)  In fact, since 2019, D-Link Systems, Inc. has received more shipments at

11   the Port of Los Angeles than any other port in the United States.  (*Id.*)

12        **C.    Ruijie**

13        36.    Ruijie is subject to this Court's specific and general personal

14   jurisdiction due at least to its substantial business in this State and District, including

15   by regularly doing or soliciting business, engaging in other persistent conduct

16   targeting residents of California and this District, and/or deriving substantial revenue

17   from infringing goods offered for sale, sold, and imported vicariously through and/or

18   in concert with its related entities, alter egos, intermediaries, agents, distributors,

19   partners, subsidiaries, clients, customers, affiliates, and/or consumers.

20        37.    This Court has personal jurisdiction over Ruijie because it sells

21   infringing products in the District.  For instance, Ruijie purposefully engages in

22   selling infringing products in California, including in this District, via Amazon.com.

23   (Ex. 2 [Amazon Ruijie Listing]; Ex. 3 [Amazon Purchase Receipt].)  Skyworks'

24   cause of action arises directly from Ruijie's business contacts and other activities in

25   the State of California and the Central District of California.

26        38.    On information and belief, Ruijie has derived revenues from its

27   infringing acts occurring within the State of California and within the District.

28

39.    Venue is proper in this District as to Ruijie because it is a foreign corporation organized under the laws of China, with a principal place of business in China.  Since Ruijie is not a resident of the United States it may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

**FACTUAL BACKGROUND**

A.    **Technology Background**

40.    The Asserted Patents relate to an innovative collection of technologies for improving the performance and design of wireless FEMs, including Wi-Fi FEMs. These technologies relate to various aspects and features of FEMs, including power amplifiers, low-noise amplifiers, and radio frequency switches.

41.    Skyworks has been at the forefront of advancing wireless connectivity technologies, and its commitment to innovation can be seen across all of its business segments, including its wireless FEM product offerings.

42.    Wireless FEMs are integrated circuits contained in wireless routers (and many other devices) that enable the wireless router to facilitate wireless communication with a user device (*e.g.*, a computer or a cell phone) so that the user device can communicate with other systems, such as using the internet.  As noted above, wireless FEMs are typically located between the wireless router's antenna and its transceiver and are generally comprised of semiconductor components, including but not limited to, power amplifiers, low noise amplifiers, and switches. They perform the critical task of conditioning wireless signals that are transmitted and received by a device.

43.    When a user device accesses the internet, for example, it sends signals requesting data and receives the data in response.  When a user device uses Wi-Fi to request access to the internet, it sends a wireless signal to the wireless router.  The wireless router processes the signal and passes it to the internet.  When the internet responds, the wireless router processes the response, determines which user device

to send the response to (if there are multiple user devices connected to the wireless router), and wirelessly sends the response to the appropriate user device.

44.     Proper wireless communication between a user device and a wireless router requires transmission of strong and clear wireless signals.  However, myriad external factors can weaken or warp the signal during transmission.  As a result, signals received by a wireless router often need to be adjusted so that they can reach their intended destination in a discernable fashion.  This signal adjustment is typically performed by the wireless router's FEM.

45.     For example, during the transmission of a wireless signal from the wireless router to a user device, outside noise sources may disrupt the transmitted signal.  This disruption is commonly referred to as "interference," and it can decrease the strength and quality of the signal sent from the wireless router to the user device. To prevent this, the router sends the signal from its transceiver to the wireless FEM for adjustment for wireless transmission.  The wireless FEM uses power amplifiers to strengthen the signal without distorting it.  This reduces the impact of any interference the signal might experience during transmission so that a strong and clear signal can be received by the user device.

46.     Further, when the wireless router receives a signal from the user device, factors such as the distance between the wireless router and the user device can reduce the signal strength.  To account for this, the router uses the wireless FEM for adjustment of the received wireless signal.  The FEM can use its low-noise amplifier to both amplify the strength of the signal and isolate the signal from interference. This ensures that the signal received by the wireless router is strong enough for the wireless router to properly process and route.

47.     The Asserted Patents reflect Skyworks' many years of dedication to and investment in research and development related to wireless FEMs.  Designing wireless FEM chips that can keep pace with new wireless networking capabilities has posed significant challenges for FEM producers—especially given the

increasing need for smaller and more efficient chips. The technologies of the Asserted Patents address these challenges by enhancing wireless FEM performance in a power-efficient manner through use of improved circuitry associated with power amplifiers and innovative RF switch systems.

### B.    The Asserted Patents[3]

59.    As set forth below, KCT, D-Link, and Ruijie have been and are still infringing the Asserted Patents by making, using, offering for sale, selling, or importing wireless FEMs and/or products that contain wireless FEMs that practice the Asserted Patents, or by contributing to infringement or inducing others to infringe. Each Defendant's acts of infringement have occurred within this District and elsewhere throughout the United States.

#### i)    *The '101 Patent*

60.    The '101 patent, entitled "Apparatus and methods for biasing power amplifiers," was duly and legally issued on May 6, 2014, and has been in full force and effect since its issuance. A true and correct copy of the '101 patent has been filed on the case docket at Dkt-1-6.

61.    Skyworks owns all rights to the '101 patent, including the full and exclusive right to enforce the patent and seek all legal and equitable remedies for infringement thereof.

62.    The '101 patent relates generally to radio frequency ("RF") power amplifier systems and methods for biasing of power amplifiers.

63.    The '101 patent explains that prior art power amplifiers struggled to granularly manage the "amplification of a RF signal," which is necessary because

---

[3] All non-technical descriptions of the Asserted Patents included in this First Amended Complaint for Patent Infringement are presented to give a general background to the patents. Statements made in connection with these non-technical descriptions are not intended nor should they be used for purposes of patent claim construction. Skyworks presents these statements subject to and without waiver of its right to argue that claim terms should be construed in a particular way under claim interpretation jurisprudence and the relevant evidence.

"amplifying the RF signal to an incorrect power level can cause a wireless device to transmit out of band." (Dkt 1-6 ['101 patent] at 1:28-30.) As such, the '101 patent explains that there was a need for "improved power amplifier systems" and "improving power amplifier biasing." (*Id.* at 1:31-33.)

64. The '101 patent addresses this problem, for example, through a "power amplifier system" that may contain a "bias block [that] includes a time dependent signal generator configured to shape an enable signal of the power amplifier to generate a control current, a current amplifier configured to amplify the control current to generate a correction current, and a primary biasing circuit configured to generate a bias current for the power amplifier based at least partly on the correction current." (*Id.* at 1:37-46.) According to the '101 patent, such a power amplifier system "correct[s] for a variation in gain of the power amplifier when the power amplifier is enabled" (*id.* at 1:46-48), which "can improve the power amplifier's performance" (*id.* at 4:39-42).

ii) *The '563 Patent*

65. The '563 patent, entitled "Apparatus and methods for biasing of power amplifiers," was duly and legally issued on March 13, 2018, and has been in full force and effect since its issuance.[4] A true and correct copy of the '563 patent has been filed on the case docket at Dkt-1-7.

66. Skyworks owns all rights to the '563 patent, including the full and exclusive right to enforce the patent and seek all legal and equitable remedies for infringement thereof.

67. The '563 patent relates generally to RF power amplifier systems and methods for biasing of power amplifiers.

---

[4] The '563 patent is a continuation of U.S. patent application No. 14/825,053, which is a continuation of U.S. patent application No. 14/242,150, which is a continuation of U.S. patent application No. 13/468,749 that issued as the '101 patent that Skyworks asserts in this First Amended Complaint for Patent Infringement.

68.    The '563 patent explains that prior art power amplifiers struggled to granularly manage the "amplification of a RF signal," which is important because "amplifying the RF signal to an incorrect power level can cause a wireless device to transmit out of band." (Dkt 1-7 ['563 patent] at 1:38-41.)  As such, the '563 patent explains that there was a need for "improved power amplifier systems" and "improving power amplifier biasing." (*Id.* at 1:42-44.)

69.    The '563 patent addresses this problem, for example, through a "power amplifier system" that may contain a "bias block [that] includes a time dependent signal generator configured to shape an enable signal of the power amplifier to generate a control current, a current amplifier configured to amplify the control current to generate a correction current, and a primary biasing circuit configured to generate a bias current for the power amplifier based at least partly on the correction current." (*Id.* at 1:48-58.)  According to the '563 patent, such a power amplifier system "correct[s] for a variation in gain of the power amplifier when the power amplifier is enabled" (*id.* at 1:58-60), which "can improve the power amplifier's performance" (*id.* at 4:52-55).  Additionally, the '563 patent describes techniques to arrange the components of its inventive power amplifier system in a way that can allow "the magnitude of the components of the time-dependent signal generator [to] be reduced to a size suitable for on-chip integration." (*Id.* at 9:1-7.)

iii)    *The '579 Patent*

70.    The '579 patent, entitled "Radio frequency devices having reduced intermodulation distortion," was duly and legally issued on September 20, 2016, and has been in full force and effect since its issuance.[5]  A true and correct copy of the '579 patent has been filed on the case docket at Dkt-1-8.

---

[5] The '579 patent is a division of application No. 13/936,175, filed on July 6, 2013, which issued as U.S. Patent No. 9,148,194.

71.    Skyworks owns all rights to the '579 patent, including the full and exclusive right to enforce the patent and seek all legal and equitable remedies for infringement thereof.

72.    The '579 patent relates generally to "a radio-frequency (RF) switch system" designed to reduce signal interference.  (Dkt. 1-8 ['579 patent] at 1:34-37.)

73.    The '579 patent explains that "mixing products from other RF signals" can cause "an unwanted signal [to be] added to a desired signal" and that "[s]uch an effect can be particularly dominant in a multi-mode, multi-band environment."  (*Id.* at 9:2-5.)  The '579 patent refers to the unwanted signal as "intermodulation distortion" or "IMD" and notes that it can "yield frequencies that are not harmonic frequencies."  (*Id.* at 9:5-7.)  The '579 patent explains that this is problematic because it "can contribute to the introduction of spurious signals into the RF system, thereby contributing to degradation of overall RF system linearity and IMD performance."  (*Id.* at 6:49-53.)

74.    The '579 patent addresses this problem, for example, through an RF device designed to reduce IMD.  (*Id.* at Abstract.)  The RF device may contain an RF switch system that "includes a switch having a stack of field-effect transistors (FETs) connected in series between first and second nodes" (*id.* at 1:34-37) and "a capacitor connected in series with the switch configured to inhibit a low-frequency blocker system from mixing with a fundamental-frequency signal in the switch" (*id.* at 1:37-40).  According to the '579 patent, this system can allow for "a low-frequency jammer signal [to] be blocked or reduced from mixing with any ON or OFF paths" (*id.* at 9:49-53), which can improve the "linearity of the system building blocks," leading to a decrease in "the overall susceptibility of a system to interference" (*id.* at 9:9-14).

iv)    *The '194 Patent*

75.    The '194 patent, entitled "Radio-frequency switch system having improved intermodulation distortion performance," was duly and legally issued on

September 29, 2015, and has been in full force and effect since its issuance.  A true and correct copy of the '194 patent has been filed on the case docket at Dkt-1-9.

76.  Skyworks owns all rights to the '194 patent, including the full and exclusive right to enforce the patent and seek all legal and equitable remedies for infringement thereof.

77.  The '194 patent relates generally to "a radio-frequency (RF) switch system" designed to reduce signal interference.  (Dkt. 1-9 ['194 patent] at 1:31-37.)

78.  The '194 patent explains that "mixing products from other RF signals" can cause "an unwanted signal [to be] added to a desired signal" and that "[s]uch an effect can be particularly dominant in a multi-mode, multi-band environment."  (*Id.* at 8:55-60.)  The '194 patent refers to the unwanted signal as "intermodulation distortion" or "IMD" and notes that it can "yield frequencies that are not harmonic frequencies."  (*Id.*)  The '194 patent explains that this is problematic because it "can contribute to the introduction of spurious signals into the RF system, thereby contributing to degradation of overall RF system linearity and IMD performance."  (*Id.* at 6:38-44.)

79.  The '194 patent addresses this problem through, for example, an RF device designed to reduce IMD.  (*Id.* at Abstract.)  The RF device may contain an RF switch system that "includes a switch having a stack of field-effect transistors (FETs) connected in series between first and second nodes" (*id.* at 1:31-34) and "a capacitor connected in series with the switch and configured to inhibit a low-frequency blocker signal from mixing with a fundamental-frequency signal in the switch" (*id.* at 1:34-37).  According to the '194 patent, this system can allow for "a low-frequency jammer signal [to] be blocked or reduced from mixing with any ON or OFF paths," which can "lead to improvement in IMD performance, especially for low-frequency blocker signals."  (*Id.* at 9:35-38.)

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,717,101**

80.  Skyworks re-alleges and incorporates by reference the allegations of

the preceding paragraphs of this First Amended Complaint for Patent Infringement, as if fully set forth herein.

81.    The '101 patent is valid and enforceable under the United States Patent Laws.

**A.    <u>Infringement by the KCT Defendants</u>**

82.    KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '101 patent by making, using, offering for sale, selling, or importing infringing wireless FEMs, including, but not limited to KCT's KCT8547HE, KCT8539S, KCT8239S, and KCT8576HE  FEM products (the "Accused KCT Products").[6]

83.    The Accused KCT Products infringe at least claims 1, 2, 10-11, 17, 18, 20, 21, and 22 of the '101 patent.

84.    For instance, the Accused KCT Products infringe independent claims 1, 17, and 21 of the '101 patent for at least the reasons described in Skyworks' exemplary infringement charts attached to this First Amended Complaint for Patent Infringement as Exhibit 4 (KCT8547HE infringement chart), Exhibit 5 (KCT8539S infringement chart), and those filed on the docket at Dkt 1-12 (KCT8576HE infringement chart) and Dkt. 1-13 (KCT8239S infringement chart).

85.    With respect to claims 2 and 22, the Accused KCT Products further contain a resistor-capacitor (RC) network in a time-dependent signal generator. Thus, the Accused KCT Products infringe claims 2 and 22 of the '101 patent.

86.    With respect to claim 10, the Accused KCT Products further contain a bipolar transistor in a power amplifier.  The bipolar transistor has an emitter, a base,

---

[6] Skyworks' infringement allegations regarding the '101 patent extend to all KCT wireless FEMs embodying an infringing power amplifier system, including without limitation KCT's Wi-Fi 6, 6E, and 7 FEMs.

and a collector, the base configured to receive a radio frequency (RF) signal and a bias current.  Thus, the Accused KCT Products infringe claim 10 of the '101 patent.

87.    With respect to claim 11, the bipolar transistor contained in Accused KCT Products has an emitter electrically connected to a power low voltage.  The bipolar transistor has a collector configured to generate an amplified version of the RF signal.  Thus, the Accused KCT Products infringe claim 11 of the '101 patent.

88.    With respect to claim 18, the Accused KCT Products further use a resistor-capacitor (RC) network of a time-dependent signal generator.  Thus, the Accused KCT Products infringe claim 18 of the '101 patent.

89.    With respect to claim 20, when generating a bias current, the Accused KCT Products further shape the bias current so as to compensate for a gain variation of a transistor.  On information and belief, the transistor is a heterojunction bipolar transistor (HBT).  Thus, the Accused KCT Products infringe claim 20 of the '101 patent.

90.    KCT has had knowledge of the '101 patent at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4 GHz and 5 GHz wireless FEMs infringed the claims of certain Skyworks patents, including (but not limited to) the '101 patent family, and including without limitation U.S. Patent Nos. 9,136,803, 9,667,203, 9,917,563, and 10,566,943. (Dkt. 1-14 [2023 Notice Letter] at 1-2.)  Skyworks met with KCT and gave a presentation outlining KCT's infringement.  Skyworks further sent a letter to KCT on April 23, 2024 providing notice of KCT's infringement of each Asserted Patent, including the '101 patent.  (Dkt. 1-15 [2024 KCT Notice Letter].)  Moreover, on May 8, 2024, KCT issued a press release confirming its knowledge of Skyworks's infringement allegations based on the '101 patent (among other patents).  (Ex. 7 [Machine Translated KCT Press Release].)  Despite receiving notice of its infringement, KCT has continued to infringe Skyworks' patented technology, including the technology claimed in the '101 patent, and made no effort to avoid infringement.  These actions

1    demonstrate KCT's willful, blatant, and egregious disregard for Skyworks' patent

2    rights.

3        91.    On information and belief, KCT actively, knowingly, and intentionally

4    induced infringement of the '101 patent by, for example, controlling the design and

5    manufacture of, offering for sale, selling, supplying, and otherwise providing

6    instruction and guidance regarding the Accused KCT Products, with the knowledge

7    and specific intent to encourage and facilitate infringing uses of such products by

8    resellers and retailers of the Accused KCT Products and end products containing the

9    Accused KCT Products, both inside and outside the United States.  For example,

10   KCT's website advertises the Accused KCT Products as integrating "a high-

11   efficiency high-linearity power amplifier (PA)" that includes a "power detector" for

12   "accurately monitoring [] output power from the [power amplifier]." (KXComTech,

13   *KCT8547HE-1*,    [https://perma.cc/7QFB-L3FW];    KXComTech,    *KCT8539S*,

14   [https://perma.cc/WRA7-GDPD];          KXComTech,          *KCT8576HE*,

15   [https://perma.cc/A72U-RFMF]); *see also* KXComTech, *KCT8239S*,

16   [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully

17   integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which

18   incorporates key RF functionality," which is "integrated with a high-efficiency

19   power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated

20   matching network and a single-pole, double-throw (SPDT) switch all in one

21   device").)  Further, KCT advertises the Accused KCT Products as being pin-to-pin

22   replacements for Skyworks' products.  For instance, KCT's product roadmap

23   presentation published in the second quarter of 2023 indicated that the accused

24   KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11

25   product.  (Dkt. 1-4 [KCT Product Roadmap Presentation] at 13.)  On information

26   and belief, KCT sells and distributes infringing products to customers in the United

27   States both directly and through third-party distributors like Disman Bakner.

28   (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech,

*Distributors*, [https://perma.cc/FYC6-XH8A].)  On information and belief, KCT also sells the Accused KCT Products to the D-Link and Ruijie Defendants with knowledge that the Accused KCT Products will be incorporated into wireless routers sold by D-Link and Ruijie in the United States.  On information and belief, KCT's distributors, customers, and end users directly infringe the '101 patent by, for example, making, using, offering to sell, and/or selling within the United States, and importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

92.    KCT also contributes to infringement of the '101 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '101 patent.  These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '101 patent.  Specifically, on information and belief, KCT sells the Accused KCT Products to resellers, retailers, and end product manufacturers with knowledge that such entities perform acts of direct infringement with the Accused KCT Products.  On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakner.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)  On information and belief, KCT's distributors, customers, and end users directly infringe the '101 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

93.    As a result of KCT's infringement of the '101 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount subject to proof at trial.

94.    In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

95.    On information and belief, KCT's infringement of the '101 patent has been and continues to be willful.  As noted above, KCT has had knowledge of the '101 patent and its infringement of the '101 patent since at least March 7, 2023. KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.    Thus, KCT's infringing actions have been and continue to be consciously willful.

96.    Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of KCT's copying of Skyworks' technology in the Accused KCT Products—which warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

## B.    Infringement by the D-Link Defendants

97.    D-Link has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '101 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT Products that practice the '101 patent, including but not limited to the D-Link AX1800 wireless router.

98.    The D-Link AX1800 wireless router infringes the '101 patent because it contains a KCT8547HE wireless FEM.  For the reasons described above (*supra*

¶¶ 83-89), the KCT8547HE wireless FEM infringes at least claims 1, 2, 10-11, 17, 18, 20, 21, and 22 of the '101 patent.

99.    An exemplary infringement chart showing infringement of independent claims 1, 17, and 21 of the '101 patent by the D-Link AX1800 wireless router is set forth as Exhibit 4.

100.    D-Link actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '101 patent by its customers and end users.  D-Link has known of the '101 patent and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter to D-Link providing notice that D-Link's AX1800 wireless router infringed enumerated claims of the '101 patent through its use of Accused KCT Products.  (Ex. 8 [2024 D-Link Notice Letter].)  Despite notice, D-Link nevertheless actively induces its customers, including end-users of the D-Link AX1800, to directly infringe the '101 patent by instructing, directing, and encouraging these end-users to purchase and use the D-Link AX1800 wireless router and the Accused KCT Products it contains.  On information and belief, D-Link instructs, directs, and encourages its customers to infringe by advertising the AX1800 wireless router (D-Link, *AX-1800*, [https://perma.cc/6JQD-5DVR] (contending that the AX1800 wireless router provides "faster and more reliable Wi-Fi speeds" on both 2.4Ghz and 5GHz Wi-Fi bands in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials.  For instance, the D-Link AX1800's user manual lists a series of troubleshooting strategies that the end-user can perform to resolve connectivity issues, including "unplug[ing] the power to the router for 10 seconds and plug[ing] back in" and then connecting the router to the desired computer device.  (D-Link, *D-Link R18 User Manual*, [https://support.dlink.com/resource/products/R18/REVA/R18_A1_Manual_v1.00(WW).pdf] at 141-42.)  The process of starting the D-Link AX1800 wireless router

and connecting it to a user device like a computer is an infringing use of the Accused KCT Product contained within that router, including without limitation because following this instruction from D-Link causes the Accused KCT Product inside the D-Link router to perform the method steps claimed in the '101 patent.

101.   D-Link also contributes to infringement of the '101 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the D-Link AX1800 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '101 patent.  The D-Link AX1800 wireless router is known by D-Link to contain the KCT8547HE Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '101 patent.  Specifically, on information and belief, D-Link sells the D-Link AX1800 wireless router to resellers, retailers, and end users with knowledge that the D-Link AX1800 wireless router contains the KCT8547HE, which is used for infringement. D-Link's customers directly infringe the '101 patent by, for example, using, without authority or license, the D-Link AX1800 wireless router, including to perform the method steps claimed by the '101 patent.

102.   As a result of D-Link's infringement of the '101 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of D-Link's wrongful acts in an amount subject to proof at trial.

103.   In addition, D-Link's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

104.   On information and belief, D-Link's infringement of the '101 patent has been and continues to be willful.  As noted above, D-Link has had knowledge of the '101 patent and its infringement of the '101 patent since at least April 23, 2024. D-Link has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.  Thus, D-Link's infringing actions have been and continue to be consciously willful.

105.    Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of D-Link's use of the KCT8547HE wireless FEM, which on information and belief copies Skyworks' technology, in the D-Link AX1800 wireless router—that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

### C.    Infringement by Ruijie

106.    Ruijie has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '101 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT Products that practice the '101 patent, including but not limited to the Ruijie Reyee E5 AX3200 wireless router.

107.    The Ruijie Reyee E5 AX3200 wireless router infringes the '101 patent because it contains a KCT8539S Wi-Fi FEM.  For the reasons described above (*supra* ¶¶ 83-89), the KCT8539S Wi-Fi FEM infringes at least claims 1, 2, 10-11, 17, 18, 20, 21, and 22 of the '101 patent.

108.    An exemplary infringement chart showing infringement of independent claims 1, 17, and 21 of the '101 patent by the Ruijie Reyee E5 AX3200 wireless router is set forth as Exhibit 5.

109.    Ruijie actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '101 patent by its customers and end users.  Ruijie has known of the '101 patent and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter to Ruijie providing notice that Ruijie infringes enumerated claims of the '101 patent through its use of Accused KCT Products in its Wi-Fi routers.  (Ex. 9 [2024 Ruijie Notice Letter].)  Despite this notice, Ruijie's infringement has continued unabated.  On July 11, 2024, for example, Skyworks purchased a Ruijie Reyee E5 AX3200 wireless router in the United States that, upon tear-down inspection, contained several of the accused KCT8539S wireless FEMs.  (Ex. 17 [Ruijie Product Purchase

Receipt]; Ex. 10 [Ruijie Board Photo].)  Ruijie thus continues to actively induce customers and end-users of its wireless router products containing KCT FEMs to directly infringe the '101 patent, including for example by instructing, directing, and encouraging these customers and end-users to purchase and use Ruijie wireless routers and the Accused KCT Products they contain.  On information and belief, Ruijie instructs, directs, and encourages its customers to infringe by, for example, advertising the Reyee E5 AX3200 wireless router (Amazon, *Ruijie Reyee E5 AX3200*, [https://perma.cc/P8B8-NNP9] (contending that the Reyee E5 AX3200 contains 8 Wi-Fi FEMs, which allows the router to provide higher Wi-Fi speeds in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials.  For instance, the Ruijie Reyee E5 AX3200 wireless router's user manual outlines certain steps to configure the router to connect with a user device, including powering on the router, selecting the router's internet connection on a user device, and connecting the device to the router.  (Ruijie, *Reyee E5 AX3200 User Guide*, [https://manuals.plus/reyee/rg-e5-mesh-smart-wifi-6-router-manual.pdf] at 3-4.)  The process of connecting the Ruijie Reyee E5 AX3200 wireless router to a user device like a computer is an infringing use of the Accused KCT Product contained within that router, including without limitation because following this instruction from Ruijie causes the Accused KCT Product inside the Ruijie router to perform the method steps claimed in the '101 patent.

110.  Ruijie also contributes to infringement of the '101 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Ruijie Reyee E5 AX3200 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '101 patent.  The Ruijie Reyee E5 AX3200 wireless router is known by Ruijie to contain the KCT8539S Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '101 patent.  Specifically, on information and belief, Ruijie sells the Ruijie Reyee

E5 AX3200 wireless router to resellers, retailers, and end users with knowledge that the Ruijie Reyee E5 AX3200 wireless router contains the KCT8539S, which is used for infringement.   Ruijie's customers directly infringe the '101 patent by, for example, using, without authority or license, the Ruijie Reyee E5 AX3200 wireless router, including to perform the method steps claimed by the '101 patent.

111.   As a result of Ruijie's infringement of the '101 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of Ruijie's wrongful acts in an amount subject to proof at trial.

112.   In addition, Ruijie's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

113.   On information and belief, Ruijie's infringement of the '101 patent has been and continues to be willful.  As noted above, Ruijie has had knowledge of the '101 patent and its infringement of the '101 patent since at least April 23, 2024. Ruijie has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.   Thus, Ruijie's infringing actions have been and continue to be consciously willful.

114.   Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of Ruijie's use of the KCT8539S wireless FEM, which on information and belief copies Skyworks' technology, in the Ruijie Reyee E5 AX3200 wireless router — that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 9,917,563

115.   Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this First Amended Complaint for Patent Infringement, as if fully set forth herein.

116.   The '563 patent is valid and enforceable under the United States Patent Laws.

### A.    Infringement by the KCT Defendants

117.   KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '563 patent by making, using, offering for sale, selling, or importing wireless FEMs that infringe the '563 patent, including but not limited to the Accused KCT Products.[7]

118.   The Accused KCT Products infringe at least claims 14, 15, 17, and 20 of the '563 patent.

119.   For instance, the Accused KCT Products infringe independent claim 14 of the '563 patent for at least reasons described in Skyworks' exemplary infringement charts set forth as Exhibit 11 (KCT8547HE infringement chart), Exhibit 12 (KCT8539S infringement chart), and those filed on the case docket at Dkt. 1-18 (KCT8576HE infringement chart) and Dkt. 1-19 (KCT8239S infringement chart).

120.   With respect to claim 15, the Accused KCT Products further contain a first transistor in a primary bias circuit.  The correction current as in claim 14 (Exs. 11-12, Dkt 1-18, Dkt. 1-19), is configured to change a current flowing through the first transistor.  Thus, the Accused KCT Products infringe claim 15 of the '563 patent.

121.   With respect to claim 17, the Accused KCT Products further contain a current mirror in a gain correction circuit.  The current mirror is configured to generate the correction current by mirroring the control current as in claim 14.  The current mirror is further configured to receive a power amplifier enable signal.  Thus, the Accused KCT Products infringe claim 17 of the '563 patent.

122.   With respect to claim 20, the Accused KCT Products further contain a second transistor in a primary bias circuit.  The second transistor is electrically coupled to the first transistor as in claim 15.  The second transistor is further

---

[7] Skyworks' infringement allegations regarding the '563 patent extend, without limitation, to all KCT wireless FEMs embodying an infringing power amplifier system, including, without limitation, KCT's Wi-Fi 6, 6E, and 7 certified FEMs.

configured to provide a bias signal to a power amplifier. Thus, the Accused KCT Products infringe claim 20 of the '563 patent.

123.    KCT has had knowledge of the '563 patent at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4 GHz and 5 GHz wireless FEMs infringed the claims of certain Skyworks patents, including (but not limited to) the '563 patent. (Dkt. 1-14 [2023 Notice Letter] at 1-2.) Skyworks met with KCT and gave a presentation outlining KCT's infringement. Skyworks further sent a letter to KCT on April 23, 2024, providing notice of KCT's infringement of each Asserted Patent, including the '563 patent. (Dkt. 1-15 [2024 KCT Notice Letter].) Moreover, on May 8, 2024, KCT issued a press release confirming knowledge of Skyworks' infringement allegations based on the '563 patent (among other patents). (Ex. 7 [Machine Translated KCT Press Release].) Despite receiving notice of its infringement, KCT has continued to infringe Skyworks' patented technology, including the technology claimed in the '563 patent, and made no effort to avoid infringement. These actions demonstrate KCT's willful, blatant, and egregious disregard for Skyworks' patent rights.

124.    KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '563 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States. For example, KCT's website advertises the Accused KCT Products as integrating "a high-efficiency high-linearity power amplifier (PA)" that includes a "power detector" for "accurately monitoring [] output power from the [power amplifier]." (KXComTech, *KCT8547HE-1*, [https://perma.cc/7QFB-L3FW]; KXComTech, *KCT8539S*, [https://perma.cc/WRA7-GDPD]; KXComTech, *KCT8576HE*,

[https://perma.cc/A72U-RFMF]);   *see*   *also*   KXComTech,   *KCT8239S*, [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which incorporates key RF functionality," which is "integrated with a high-efficiency power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated matching network and a single-pole, double-throw (SPDT) switch all in one device").)  Further, KCT advertises the Accused KCT Products as being pin-to-pin replacements for Skyworks' products.   For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product.  (Dkt. 1-4 [KCT Product Roadmap Presentation] at 13.)  On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakner. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)   On information and belief, KCT also sells the Accused KCT Products to the D-Link and Ruijie Defendants with knowledge that the Accused KCT Products will be incorporated into wireless routers sold by D-Link and Ruijie in the United States.  On information and belief, KCT's distributors, customers, and end users directly infringe the '563 patent by, for example, making, using, offering to sell, and/or selling within the United States, and importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

125.   KCT also contributes to infringement of the '563 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '563 patent.  These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the

'563 patent.  Specifically, on information and belief, KCT sells the Accused KCT Products to resellers, retailers, and end product manufacturers with knowledge that such entities perform acts of direct infringement with the Accused KCT Products. On information and belief, KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakner.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)  On information and belief, KCT's distributors, customers, and end users directly infringe the '563 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

126.   As a result of KCT's infringement of the '563 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount subject to proof at trial.

127.   In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

128.   On information and belief, KCT's infringement of the '563 patent has been and continues to be willful.  As noted above, KCT has had knowledge of the '563 patent and its infringement of the '563 patent since at least March 7, 2023. KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.   Thus, KCT's infringing actions have been and continue to be consciously willful.

129.   Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of KCT's copying of Skyworks' technology in the Accused KCT Products—which warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

**B.     Infringement by the D-Link Defendants**

130.   D-Link has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '563 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT Products that practice the '563 patent, including but not limited to the D-Link AX1800 wireless router.

131.   The D-Link AX1800 wireless router infringes the '563 patent because it contains a KCT8547HE wireless FEM.  For the reasons described above (*supra* ¶¶ 118-122), the KCT8547HE wireless FEM infringes at least claims 14, 15, 17, and 20 of the '563 patent.

132.   An exemplary infringement chart showing infringement of independent claim 14 of the '563 patent by the D-Link AX1800 wireless router is set forth as Exhibit 11.

133.   D-Link actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '563 patent by its customers and end users.  D-Link has known of the '563 patent and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter to D-Link providing notice that D-Link's AX1800 wireless router infringed enumerated claims of the '563 patent through its use of Accused KCT Products.  (Ex. 8 [2024 D-Link Notice Letter].)  Despite notice, D-Link nevertheless actively induces its customers, including end-users of the D-Link AX1800, to directly infringe the '563 patent by instructing, directing, and encouraging these end-users to purchase and use the D-Link AX1800 wireless router and the Accused KCT Product it contains.  On information and belief, D-Link instructs, directs, and encourages its customers to infringe by advertising the AX1800 wireless router (D-Link, *AX-1800*, [https://perma.cc/6JQD-5DVR] (contending that the AX1800 wireless router provides "faster and more reliable Wi-Fi speeds" on both 2.4Ghz and 5GHz Wi-Fi bands in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials.  For

instance, the D-Link AX1800's user manual lists a series of troubleshooting strategies that the end-user can perform to resolve connectivity issues, including "unplug[ing] the power to the router for 10 seconds and plug[ing] back in" and then connecting the router to the desired computer device. (D-Link, *D-Link R18 User Manual*,

[https://support.dlink.com/resource/products/R18/REVA/R18_A1_Manual_v1.00( WW).pdf] at 141-42.) D-Link's customers directly infringe because following the steps D-Link instructs them to perform, including starting the D-Link router and connecting it to a user device like a computer, results in an infringing use of the Accused KCT Product contained within that router.

134. D-Link also contributes to infringement of the '563 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the D-Link AX1800 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '563 patent. The D-Link AX1800 wireless router is known by D-Link to contain the KCT8547HE Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '563 patent. Specifically, on information and belief, D-Link sells the D-Link AX1800 wireless router to resellers, retailers, and end users with knowledge that the D-Link AX1800 wireless router contains the KCT8547HE, which is used for infringement. D-Link's customers directly infringe the '563 patent by, for example, without authority or license using the D-Link AX1800 wireless router and the KCT Accused Product it contains.

135. As a result of D-Link's infringement of the '563 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of D-Link's wrongful acts in an amount subject to proof at trial.

136. In addition, D-Link's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

137. On information and belief, D-Link's infringement of the '563 patent has been and continues to be willful. As noted above, D-Link has had knowledge of the '563 patent and its infringement of the '563 patent since at least April 23, 2024. D-Link has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, D-Link's infringing actions have been and continue to be consciously willful.

138. Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of D-Link's use of the KCT8547HE Wi-Fi FEM, which on information and belief copies Skyworks' technology, in the D-Link AX1800 wireless router—that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

### C.    Infringement by Ruijie

139. Ruijie has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '563 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT Products that practice the '563 patent, including but not limited to the Ruijie Reyee E5 AX3200 wireless router.

140. The Ruijie Reyee E5 AX3200 wireless router infringes the '563 patent because it contains a KCT8539S wireless FEM. For the reasons described above (*supra* ¶¶ 118-122), the KCT8539S Wi-Fi FEM infringes at least claims 14, 15, 17, and 20 of the '563 patent.

141. An exemplary infringement chart showing infringement of independent claim 14 of the '563 patent by the Ruijie Reyee E5 AX3200 wireless router is set forth as Exhibit 12.

142. Ruijie actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '563 patent by its customers and end users. Ruijie has known of the '563 patent and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter

to Ruijie providing notice that Ruijie infringes enumerated claims of the '563 patent through its use of Accused KCT Products in its Wi-Fi routers. (Ex. 9 [2024 Ruijie Notice Letter].) Despite this notice, Ruijie's infringement has continued unabated. On July 11, 2024, for example, Skyworks purchased a Ruijie Reyee E5 AX3200 wireless router in the United States that, upon tear-down inspection, contained several of the accused KCT8539S wireless FEMs. (Ex. 17 [Ruijie Product Purchase Receipt]; Ex. 10 [Ruijie Board Photo].) Ruijie thus continues to actively induce customers and end-users of its wireless router products containing KCT FEMs to directly infringe the '563 patent, including for example by instructing, directing, and encouraging these customers and end-users to purchase and use Ruijie wireless routers and the Accused KCT Products they contain. On information and belief, Ruijie instructs, directs, and encourages its customers to infringe by, for example, advertising Ruijie instructs, directs, and encourages its customers to infringe by advertising the Reyee E5 AX3200 wireless router (Amazon, *Ruijie Reyee E5 AX3200*, [https://perma.cc/P8B8-NNP9] (contending that the Reyee E5 AX3200 contains 8 Wi-Fi FEMs, which allows the router to provide higher Wi-Fi speeds in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials. For instance, the Ruijie Reyee E5 AX3200 wireless router's user manual outlines certain steps to configure the router to connect with a user device, including powering on the router, selecting the router's internet connection on a user device, and connecting the device to the router. (Ruijie, *Reyee E5 AX3200 User Guide*, [https://manuals.plus/reyee/rg-e5-mesh-smart-wifi-6-router-manual.pdf] at 3-4.) Ruijie's customers directly infringe because following the steps Ruijie instructs them to perform, including starting the Ruijie router and connecting it to a user device like a computer, results in an infringing use of the Accused KCT Product contained within that router.

143.  Ruijie also contributes to infringement of the '563 patent by selling for importation into the United States, importing into the United States, and/or selling

within the United States after importation the Ruijie Reyee E5 AX3200 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '563 patent.  The Ruijie Reyee E5 AX3200 wireless router is known by Ruijie to contain the KCT8539S Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '563 patent.  Specifically, on information and belief, Ruijie sells the Ruijie Reyee E5 AX3200 wireless router to resellers, retailers, and end users with knowledge that the Ruijie Reyee E5 AX3200 wireless router contains the KCT8539S, which is used for infringement.  Ruijie's customers directly infringe the '563 patent by, for example, without authority or license using the Reyee E5 AX3200 wireless router and the Accused KCT Product it contains.

144.   As a result of Ruijie's infringement of the '563 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of Ruijie's wrongful acts in an amount subject to proof at trial.

145.   In addition, Ruijie's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

146.   On information and belief, Ruijie's infringement of the '563 patent has been and continues to be willful.  As noted above, Ruijie has had knowledge of the '563 patent and its infringement of the '563 patent since at least since at least April 23, 2024.  Ruijie has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.  Thus, Ruijie's infringing actions have been and continue to be consciously willful.

147.   Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of Ruijie's use of the KCT8539S wireless FEM, which on information and belief copies Skyworks' technology, in the Ruijie Reyee E5 AX3200 wireless router—that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,450,579**

148.    Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this First Amended Complaint for Patent Infringement, as if fully set forth herein.

149.    The '579 patent is valid and enforceable under the United States Patent Laws.

### A.    Infringement by the KCT Defendants

150.    KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '579 patent by making, using, offering for sale, selling, or importing wireless FEMs that practice the '579 patent, including but not limited to the Accused KCT Products.[8]

151.    The Accused KCT Products infringe at least claims 1 and 7 of the '579 patent.

152.    For instance, the Accused KCT Products infringe independent claims 1 and 7 of the '579 patent for at least the reasons described in Skyworks' exemplary infringement charts set forth as Exhibits 13 (KCT8547HE infringement chart), Exhibit 14 (KCT8539S infringement chart), and those filed on the docket as Dkt. 1-22 (KCT8576HE infringement chart) and Dkt. 1-23 (KCT8239S infringement chart).

153.    KCT has had knowledge of the '579 patent and its infringement of the '579 patent at least since April 23, 2024, when Skyworks sent a letter to KCT providing notice of KCT's infringement of each Asserted Patent, including the '579 patent.  (Dkt. 1-15 [2024 KCT Notice Letter].)  Even before April 23, 2024, KCT was, at a minimum, willfully blind to its infringement of the '579 patent.  For instance, KCT touts that "most of [its] R&D team[]" had prior overseas industry experience before being hired to work at KCT, including at Skyworks.  (Dkt. 1-2 [KCT Press Release] ("Most of the R&D teams … have overseas work experience

---

[8] Skyworks' infringement allegations regarding the '579 patent extend, without limitation, to all KCT wireless FEMs embodying an infringing RF switch system, including, without limitation, KCT's Wi-Fi 6, 6E, and 7 certified FEMs.

[at] RFaxis (acquired by Skyworks in 2016), RFMD (merged into Qorvo), Anadigics and other internationally renowned RF front-end chip companies[.]").)  KCT also touts that the products developed by this team of engineers—including engineers who, on information and belief, were formerly employed by Skyworks or Skyworks affiliates—are "pin-to-pin" copies of Skyworks' wireless FEM chips (Dkt. 1-4 [KCT Product Roadmap Presentation] at 13), and allegedly are comparable "in terms of linearity, efficiency, noise figure, and other performance metrics" (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6]).  At the same time, KCT has been aware that Skyworks patented the technologies contained in its wireless FEM products, and that KCT's "pin-to-pin" copies infringed these patents, at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4GHz and 5 GHz Wi-Fi FEMs infringed.  (Dkt. 1-14 [2023 Notice Letter] at 1-2.)  Indeed, Skyworks met with KCT and gave a presentation outlining KCT's infringement.  Moreover, on May 8, 2024, KCT issued a press release confirming knowledge of Skyworks's infringement allegations based on the '579 patent (among other patents).  (Ex. 7 [Machine Translated KCT Press Release].)  Under the circumstances present here, KCT knew or should have known of the high probability that it infringed Skyworks' patented technologies, including the '579 patent, by making, using, selling, offering for sale, and importing its own pin-to-pin compatible wireless FEM chips.

154.   KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '579 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States. For example, KCT's website advertises the Accused KCT Products as integrating "a

high-efficiency high-linearity power amplifier (PA)" that includes a "power detector" for "accurately monitoring [] output power from the [power amplifier]." (KXComTech, *KCT8547HE-1*, [https://perma.cc/7QFB-L3FW]; KXComTech, *KCT8539S*, [https://perma.cc/WRA7-GDPD]; KXComTech, *KCT8576HE*, [https://perma.cc/A72U-RFMF]); *see also* KXComTech, *KCT8239S*, [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which incorporates key RF functionality," which is "integrated with a high-efficiency power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated matching network and a single-pole, double-throw (SPDT) switch all in one device").)  Further, KCT advertises the Accused KCT Products as being pin-to-pin replacements for Skyworks' products.  For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product.  (Dkt. 1-4 [KCT Product Roadmap Presentation] at 13.)  KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakner.  (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].)  KCT also sells the Accused KCT Products to the D-Link and Ruijie Defendants with knowledge that the Accused KCT Products will be incorporated into wireless routers sold by D-Link and Ruijie in the United States. KCT's distributors, customers, and end users directly infringe the '579 patent by, for example, making, using, offering to sell, and/or selling within the United States, and importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

155.  KCT also contributes to infringement of the '579 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not

suitable for substantial non-infringing use and which embody a material part of the invention described in the '579 patent. These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '579 patent. Specifically, on information and belief, KCT sells the Accused KCT Products to resellers, retailers, and end product manufacturers with knowledge that such entities perform acts of direct infringement with the Accused KCT Products. KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakner. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) KCT's distributors, customers, and end users directly infringe the '579 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

156. As a result of KCT's infringement of the '579 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount subject to proof at trial.

157. In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

158. On information and belief, KCT's infringement of the '579 patent has been and continues to be willful. As noted above, KCT has had, or should have had, knowledge of the '579 patent and its infringement of the '579 patent since at least April 23, 2024. KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, KCT's infringing actions have been and continue to be consciously willful.

159. Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because

of KCT's copying of Skyworks' technology in the Accused KCT Products—which
warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

### B.    Infringement by the D-Link Defendants

160.   D-Link has been and is still infringing, directly or indirectly, literally
or under the doctrine of equivalents, the '579 patent by making, using, offering for
sale, selling, or importing wireless routers that include one or more of the Accused
KCT Products that practice the '579 patent, including but not limited to the D-Link
AX1800 wireless router.

161.   The D-Link AX1800 wireless router infringes the '579 patent because
it contains a KCT8547HE Wi-Fi FEM.  For the reasons described above (*supra* ¶¶
151-152), the KCT8547HE Wi-Fi FEM infringes at least claims 1 and 7 of the '579
patent.

162.   Exemplary infringement charts showing infringement of independent
claims 1 and 7 of the '579 patent by the D-Link AX1800 wireless router are set forth
as Exhibit 13.

163.   D-Link actively, knowingly, and intentionally induces, and continues
to actively, knowingly, and intentionally induce infringement of the '579 patent by
its customers and end users.  D-Link has known of the '579 patent and Skyworks'
infringement allegations since at least April 23, 2024, when Skyworks sent a letter
to D-Link providing notice that D-Link's AX1800 wireless router infringed
enumerated claims of the '579 patent through its use of Accused KCT Products.  (Ex.
8 [2024 D-Link Notice Letter].)  Despite notice, D-Link nevertheless actively
induces its customers, including end-users of the D-Link AX1800, to directly
infringe the '579 patent by instructing, directing, and encouraging these end-users
to purchase and use the D-Link AX1800 wireless router and the Accused KCT
Products it contains.  On information and belief, D-Link instructs, directs, and
encourages its customers to infringe by advertising the AX1800 wireless router (D-
Link, AX-1800, [https://perma.cc/6JQD-5DVR] (contending that the AX1800

wireless router "reduce[s] interference between different Wi-Fi networks" in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials. For instance, the D-Link AX1800's user manual lists a series of troubleshooting strategies that the end-user can perform to resolve connectivity issues, including "unplug[ing] the power to the router for 10 seconds and plug[ing] back in" and then connecting the router to the desired computer device. (D-Link, *D-Link R18 User Manual*, [https://support.dlink.com/resource/products/R18/REVA/R18_A1_Manual_v1.00( WW).pdf] at 141-42.) The process of starting the D-Link AX1800 wireless router and connecting it to a user device like a computer is an infringing use of the Accused KCT Products contained within that router, including without limitation, because following this instruction from D-Link causes the Accused KCT Products inside the D-Link router to perform the method steps claimed in the '579 patent.

164.  D-Link also contributes to infringement of the '579 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the D-Link AX1800 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '579 patent. The D-Link AX1800 wireless router is known by D-Link to contain the KCT8547HE Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '579 patent. Specifically, on information and belief, D-Link sells the D-Link AX1800 wireless router to resellers, retailers, and end users with knowledge that the D-Link AX1800 wireless router contains the KCT8547HE, which is used for infringement. D-Link's customers directly infringe the '579 patent by, for example, using, without

authority or license, the D-Link AX1800 wireless router, including to perform the method steps claimed by the '579 patent.

165. As a result of D-Link's infringement of the '579 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of D-Link's wrongful acts in an amount subject to proof at trial.

166. In addition, D-Link's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

167. On information and belief, D-Link's infringement of the '579 patent has been and continues to be willful. As noted above, D-Link has had, or should have had, knowledge of the '579 patent and its infringement of the '579 patent since at least April 23, 2024. D-Link has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, D-Link's infringing actions have been and continue to be consciously willful.

168. Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of D-Link's use of the KCT8547HE wireless FEM, which on information and belief copies Skyworks' technology, in the D-Link AX1800 wireless router—that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

## C.  Infringement by Ruijie

169. Ruijie has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '579 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT Products that practice the '579 patent, including but not limited to the Ruijie Reyee E5 AX3200 wireless router.

170. The Ruijie Reyee E5 AX3200 wireless router infringes the '579 patent because it contains a KCT8539S Wi-Fi FEM. For the reasons described above

(*supra* ¶¶ 151-152), the KCT8539S Wi-Fi FEM infringes at least claims 1 and 7 of the '579 patent.

171.    Exemplary infringement charts showing infringement of independent claims 1 and 7 of the '579 patent by the Ruijie Reyee E5 AX3200 wireless router are set forth as Exhibit 14.

172.    Ruijie actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '579 patent by its customers and end users.  Ruijie has known of the '579 patent  and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter to Ruijie providing notice that Ruijie infringes enumerated claims of the '579 patent through its use of Accused KCT Products in its Wi-Fi routers.  (Ex. 9 [2024 Ruijie Notice Letter].)  Despite this notice, Ruijie's infringement has continued unabated.  On July 11, 2024, for example, Skyworks purchased a Ruijie Reyee E5 AX3200 wireless router in the United States that, upon tear-down inspection, contained several of the accused KCT8539S wireless FEMs.  (Ex. 17 [Ruijie Product Purchase Receipt]; Ex. 10 [Ruijie Board Photo].)  Ruijie thus continues to actively induce customers and end-users of its wireless router products containing KCT FEMs to directly infringe the '579 patent, including for example by instructing, directing, and encouraging these customers and end-users to purchase and use Ruijie wireless routers and the Accused KCT Products they contain.  On information and belief, Ruijie instructs, directs, and encourages its customers to infringe by, for example, advertising the Reyee E5 AX3200 wireless router (Amazon, *Ruijie Reyee E5 AX3200*, [https://perma.cc/P8B8-NNP9] (contending that the Reyee E5 AX3200 contains 8 Wi-Fi FEMs, which allows the router to provide higher Wi-Fi speeds in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials.  For instance, the Ruijie Reyee E5 AX3200 wireless router's user manual outlines certain steps to configure the router to connect with a user device, including powering on the router, selecting the router's

internet connection on a user device, and connecting the device to the router.  (Ruijie, *Reyee E5 AX3200 User Guide*, [https://manuals.plus/reyee/rg-e5-mesh-smart-wifi-6-router-manual.pdf] at 3-4.)  The process of starting the Ruijie Reyee E5 AX3200 wireless router and connecting it to a user device like a computer is an infringing use of the Accused KCT Products contained within that router, including without limitation, because following this instruction from Ruijie causes the Accused KCT Products inside the Ruijie router to perform the method steps claimed in the '579 patent.

173.    Ruijie also contributes to infringement of the '579 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Ruijie Reyee E5 AX3200 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '579 patent.  The Ruijie Reyee E5 AX3200 wireless router is known by Ruijie to contain the KCT8539S Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '579 patent.  Specifically, on information and belief, Ruijie sells the Ruijie Reyee E5 AX3200 wireless router to resellers, retailers, and end users with knowledge that the Ruijie Reyee E5 AX3200 wireless router contains the KCT8539S, which is used for infringement.  Ruijie's customers directly infringe the '579 patent by, for example, using, without authority or license, the Ruijie Reyee E5 AX3200 wireless router, including to perform the method steps claimed by the '579 patent.

174.    As a result of Ruijie's infringement of the '579 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of Ruijie's wrongful acts in an amount subject to proof at trial.

175.    In addition, Ruijie's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

176.    On information and belief, Ruijie's infringement of the '579 patent has been and continues to be willful.  As noted above, Ruijie has had, or should have

had, knowledge of the '579 patent and its infringement of the '579 patent since at least April 23, 2024. Ruijie has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights. Thus, Ruijie's infringing actions have been and continue to be consciously willful.

177. Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of Ruijie's use of the KCT8539S wireless FEM, which on information and belief copies Skyworks' technology, in the Ruijie Reyee E5 AX3200 wireless router—that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,148,194

178. Skyworks re-alleges and incorporates by reference the allegations of the preceding paragraphs of this First Amended Complaint for Patent Infringement, as if fully set forth herein.

179. The '194 patent is valid and enforceable under the United States Patent Laws.

### A.    Infringement by the KCT Defendants

180. KCT has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '194 patent by making, using, offering for sale, selling, or importing wireless FEMs that practice the '194 patent, including but not limited to the Accused KCT Products).[9]

181. The Accused KCT Products infringe at least claim 4 of the '194 patent for at least the reasons described in Skyworks' exemplary infringement chart set forth as Exhibits 15 (KCT8547HE infringement chart), Exhibit 16 (KCT8539S

---

[9] Skyworks' infringement allegations regarding the '194 patent extend, without limitation, to all KCT wireless FEMs embodying an infringing RF switch system, including, without limitation, KCT's Wi-Fi 6, 6E, and 7 certified FEMs.

infringement chart), and those filed on the case docket at Dkt. 1-26 (KCT8576HE infringement chart) and Dkt. 1-27 (KCT8239S infringement chart).

182.   KCT has had knowledge of the '194 patent and its infringement of the '194 patent at least since April 23, 2024, when Skyworks sent a letter to KCT providing notice of KCT's infringement of each Asserted Patent, including the '194 patent.  (Dkt. 1-15 [2024 KCT Notice Letter].)  Even before April 23, 2024, KCT was, at a minimum, willfully blind to its infringement of the '194 patent.  For instance, KCT touts that "most of [its] R&D team[]" had prior overseas industry experience before being hired to work at KCT, including at Skyworks.  (Dkt. 1-2 [KCT Press Release] ("Most of the R&D teams … have overseas work experience [at] RFaxis (acquired by Skyworks in 2016), RFMD (merged into Qorvo), Anadigics and other internationally renowned RF front-end chip companies[.]").)  KCT also touts that the products developed by this team of engineers—comprised at least in part of engineers who, on information and belief, were formerly employed by Skyworks or Skyworks affiliates—are "pin-to-pin" copies of Skyworks' wireless FEM chips (Dkt. 1-4 [KCT Product Roadmap Presentation] at 13), and allegedly are comparable "in terms of linearity, efficiency, noise figure, and other performance metrics" (KXComTech, *IPO Press Release*, [https://perma.cc/6D7X-VUU6]).  At the same time, KCT has been aware that Skyworks patented the technologies contained in its wireless FEM products, and that KCT's "pin-to-pin" copies infringed these patents, at least since March 7, 2023, when Skyworks sent a letter to KCT's President informing KCT that its 2.4GHz and 5 GHz Wi-Fi FEMs infringed other patents in Skyworks' portfolio.  (Dkt. 1-14 [2023 Notice Letter] at 1-2.) Indeed, Skyworks even met with KCT and gave a presentation outlining KCT's infringement.  Moreover, on May 8, 2024, KCT issued a press release confirming knowledge of Skyworks's infringement allegations based on the '194 patent (among other patents).  (Ex. 7 [Machine Translated KCT Press Release].)  Under the circumstances present here, KCT knew or should have known of the high probability

that it infringed Skyworks' patented technologies, including the '194 patent, by making, using, selling, offering for sale, and importing its own pin-to-pin compatible wireless FEM chips.

183.   KCT actively, knowingly, and intentionally has induced and continues to induce infringement of the '194 patent by, for example, controlling the design and manufacture of, offering for sale, selling, supplying, and otherwise providing instruction and guidance regarding the Accused KCT Products, with the knowledge and specific intent to encourage and facilitate acts of direct infringement with respect to such products, including by resellers, retailers, end product manufacturers, and end users of the Accused KCT Products, both inside and outside the United States. For example, KCT's website advertises the Accused KCT Products as integrating "a high-efficiency high-linearity power amplifier (PA)" that includes a "power detector" for "accurately monitoring [] output power from the [power amplifier]." (KXComTech, *KCT8547HE-1*, [https://perma.cc/7QFB-L3FW]; KXComTech, *KCT8539S*, [https://perma.cc/WRA7-GDPD]; KXComTech, *KCT8576HE*, [https://perma.cc/A72U-RFMF]); *see also* KXComTech, *KCT8239S*, [https://perma.cc/NS2E-VPYU] (describing the KCT8239S product as "a fully integrated 802.11b/g/n/ac/ax WLAN RF Front-end module (FEM) which incorporates key RF functionality," which is "integrated with a high-efficiency power amplifier (PA), a low noise amplifier (LNA) with bypass, the associated matching network and a single-pole, double-throw (SPDT) switch all in one device").)  Further, KCT advertises the Accused KCT Products as being pin-to-pin replacements for Skyworks' products.  For instance, KCT's product roadmap presentation published in the second quarter of 2023 indicated that the accused KCT8576HE product is pin-to-pin compatible with Skyworks' SKY85746-11 product.  (Dkt. 1-4 [KCT Product Roadmap Presentation] at 13.)  KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakner. (KXComTech, *Sales Support*,

[https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) KCT also sells the Accused KCT Products to the D-Link and Ruijie Defendants with knowledge that the Accused KCT Products will be incorporated into wireless routers sold by D-Link and Ruijie in the United States. KCT's distributors, customers, and end users directly infringe the '194 patent by, for example, making, using, offering to sell, and/or selling within the United States, and importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

184. KCT also contributes to infringement of the '194 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused KCT Products, which are not suitable for substantial non-infringing use and which embody a material part of the invention described in the '194 patent. These Accused KCT Products are known by KCT to be especially made or especially adapted for use in the infringement of the '194 patent. Specifically, on information and belief, KCT sells the Accused KCT Products to resellers, retailers, and end product manufacturers with knowledge that such entities perform acts of direct infringement with the Accused KCT Products. KCT sells and distributes infringing products to customers in the United States both directly and through third-party distributors like Disman Bakner. (KXComTech, *Sales Support*, [https://perma.cc/2PTT-F9XZ]; KXComTech, *Distributors*, [https://perma.cc/FYC6-XH8A].) KCT's distributors, customers, and end users directly infringe the '194 patent by, for example, making, using, offering to sell, selling within the United States, and/or importing into the United States, without authority or license, both the Accused KCT Products themselves and/or products containing the Accused KCT Products.

185. As a result of KCT's infringement of the '194 patent, Skyworks has been damaged. Skyworks is entitled to recover for damages sustained as a result of KCT's wrongful acts in an amount subject to proof at trial.

186.   In addition, KCT's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

187.   On information and belief, KCT's infringement of the '194 patent has been and continues to be willful.  As noted above, KCT has had, or should have had, knowledge of the '194 patent and its infringement of the '194 patent since at least April 23, 2024.  KCT has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.  Thus, KCT's infringing actions have been and continue to be consciously willful.

188.   Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of KCT's copying of Skyworks' technology in the Accused KCT Products—which warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

**B.**     <u>**Infringement by the D-Link Defendants**</u>

189.   D-Link has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '194 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT Products that practice the '194 patent, including but not limited to the D-Link AX1800 wireless router.

190.   The D-Link AX1800 wireless router infringes the '194 patent because it contains a KCT8547HE Wi-Fi FEM.  For the reasons described above (*supra* ¶ 181), the KCT8547HE Wi-Fi FEM infringes at least claim 4 of the '194 patent.

191.   An exemplary infringement chart showing infringement of independent claim 4 of the '194 patent by the D-Link AX1800 wireless router is set forth as Exhibit 15.

192.   D-Link actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '194 patent by its customers and end users.  D-Link has known of the '194 patent and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter

to D-Link providing notice that D-Link's AX1800 wireless router infringed enumerated claims of the '194 patent through its use of Accused KCT Products. (Ex. 8 [2024 D-Link Notice Letter].)  Despite notice, D-Link nevertheless actively induces its customers, including end-users of the D-Link AX1800, to directly infringe the '194 patent by instructing, directing, and encouraging these end-users to purchase and use the D-Link AX1800 wireless router and the Accused KCT Products it contains.  On information and belief, D-Link instructs, directs, and encourages its customers to infringe by advertising the AX1800 wireless router (D-Link, *AX-1800*, [https://perma.cc/6JQD-5DVR] (contending that the AX1800 wireless router "reduce[s] interference between different Wi-Fi networks" in advertising materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials.  For instance, the D-Link AX1800's user manual lists a series of troubleshooting strategies that the end-user can perform to resolve connectivity issues, including "unplug[ing] the power to the router for 10 seconds and plug[ing] back in" and then connecting the router to the desired computer device.  (D-Link, *D-Link R18 User Manual*, [https://support.dlink.com/resource/products/R18/REVA/R18_A1_Manual_v1.00(WW).pdf] at 141-42.)  D-Link customers directly infringe because following the steps D-Link instructs them to perform, including starting the D-Link router and connecting it to a user device like a computer, results in an infringing use of the Accused KCT Product contained within that router.

193.   D-Link also contributes to infringement of the '194 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the D-Link AX1800 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '194 patent.  The D-Link AX1800 wireless router is known by D-Link to contain the KCT8547HE Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '194

patent.  Specifically, on information and belief, D-Link sells the D-Link AX1800 wireless router to resellers, retailers, and end users with knowledge that the D-Link AX1800 wireless router contains the KCT8547HE, which is used for infringement. D-Link's customers directly infringe the '194 patent by, for example, without authority or license using the D-Link AX1800 wireless router and the Accused KCT Product it contains.

194.   As a result of D-Link's infringement of the '194 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of D-Link's wrongful acts in an amount subject to proof at trial.

195.   In addition, D-Link's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

196.   On information and belief, D-Link's infringement of the '194 patent has been and continues to be willful.  As noted above, D-Link has had, or should have had, knowledge of the '194 patent and its infringement of the '194 patent since at least April 23, 2024.  D-Link has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.  Thus, D-Link's infringing actions have been and continue to be consciously willful.

197.   Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of D-Link's use of the KCT8547HE wireless FEM, which on information and belief copies Skyworks' technology, in the D-Link AX1800 wireless router—that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

**C.   Infringement by Ruijie**

198.   Ruijie has been and is still infringing, directly or indirectly, literally or under the doctrine of equivalents, the '194 patent by making, using, offering for sale, selling, or importing wireless routers that include one or more of the Accused KCT

Products that practice the '194 patent, including but not limited to the Ruijie Reyee E5 AX3200 wireless router.

199.   The Ruijie Reyee E5 AX3200 wireless router infringes the '194 patent because it contains a KCT8539S Wi-Fi FEM.  For the reasons described above (*supra* ¶ 181), the KCT8539S Wi-Fi FEM infringes at least claim 4 of the '194 patent.

200.   An exemplary infringement chart showing infringement of independent claim 4 of the '194 patent by the Ruijie Reyee E5 AX3200 wireless router is set forth as Exhibit 16.

201.   Ruijie actively, knowingly, and intentionally induces, and continues to actively, knowingly, and intentionally induce infringement of the '194 patent by its customers and end users.  Ruijie has known of the '194 patent and Skyworks' infringement allegations since at least April 23, 2024, when Skyworks sent a letter to Ruijie providing notice that Ruijie infringes enumerated claims of the '194 patent through its use of Accused KCT Products.  (Ex. 9 [2024 Ruijie Notice Letter].)  Despite this notice, Ruijie's infringement has continued unabated.  On July 11, 2024, for example, Skyworks purchased a Ruijie Reyee E5 AX3200 wireless router in the United States that, upon tear-down inspection, contained several of the accused KCT8539S wireless FEMs.  (Ex. 17 [Ruijie Product Purchase Receipt]; Ex. 10 [Ruijie Board Photo].)  Ruijie thus continues to actively induce customers and end-users of its wireless router products containing KCT FEMs to directly infringe the '194 patent, including for example by instructing, directing, and encouraging these customers and end-users to purchase and use Ruijie wireless routers and the Accused KCT Products they contain.  On information and belief, Ruijie instructs, directs, and encourages its customers to infringe by, for example, advertising the Reyee E5 AX3200 wireless router (Amazon, Ruijie Reyee E5 AX3200, [https://perma.cc/P8B8-NNP9] (contending that the Reyee E5 AX3200 contains 8 Wi-Fi FEMs, which allows the router to provide higher Wi-Fi speeds in advertising

materials), and providing at least installation/technical manuals, troubleshooting guides, and/or product tutorials. For instance, the Ruijie Reyee E5 AX3200 wireless router's user manual outlines certain steps to configure the router to connect with a user device, including powering on the router, selecting the router's internet connection on a user device, and connecting the device to the router. (Ruijie, Reyee E5 AX3200 User Guide, [https://manuals.plus/reyee/rg-e5-mesh-smart-wifi-6-router-manual.pdf] at 3-4.) Ruijie customers directly infringe because following the steps Ruijie instructs them to perform, including starting the Ruijie router and connecting it to a user device like a computer, results in an infringing use of the Accused KCT Product contained within that router.

202. Ruijie also contributes to infringement of the '194 patent by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Ruijie Reyee E5 AX3200 wireless router, which is not suitable for a substantial non-infringing use and which embodies a material part of the invention described in the '194 patent. The Ruijie Reyee E5 AX3200 wireless router is known by Ruijie to contain the KCT8539S Wi-Fi FEM, which is especially made or especially adapted for use in the infringement of the '194 patent. Specifically, on information and belief, Ruijie sells the Ruijie Reyee E5 AX3200 wireless router to resellers, retailers, and end users with knowledge that the Ruijie Reyee E5 AX3200 wireless router contains the KCT8539S, which is used for infringement. Ruijie's customers directly infringe the '194 patent by, for

example, without authority or license using the Ruijie Reyee E5 AX3200 wireless router and the Accused KCT Product it contains.

203.   As a result of Ruijie's infringement of the '194 patent, Skyworks has been damaged.  Skyworks is entitled to recover for damages sustained as a result of Ruijie's wrongful acts in an amount subject to proof at trial.

204.   In addition, Ruijie's infringing acts have caused and are causing immediate and irreparable harm to Skyworks.

205.   On information and belief, Ruijie's infringement of the '194 patent has been and continues to be willful.  As noted above, Ruijie has had, or should have had, knowledge of the '194 patent and its infringement of the '194 patent since at least April 23, 2024.  Ruijie has deliberately continued to infringe in a wanton, malicious, and egregious manner, with reckless disregard for Skyworks' patent rights.  Thus, Ruijie's infringing actions have been and continue to be consciously willful.

206.   Based on the information alleged in this claim, Skyworks is informed and believes, and thereon alleges, that this is an exceptional case—including because of Ruijie's use of the KCT8539S wireless FEM, which on information and belief copies Skyworks' technology, in the Ruijie Reyee E5 AX3200 wireless router—that warrants an award of attorney's fees to Skyworks pursuant to 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Skyworks respectfully requests that this Court enter judgment in its favor as follows and award Skyworks the following relief:

a) A judgment that each of KCT, D-Link, and Ruijie have infringed at least one or more claims of the Asserted Patents, directly and/or indirectly, literally and/or under the doctrine of equivalents;

b) An award of damages sufficient to compensate Skyworks for each of KCT's, D-Link's, and Ruijie's infringement under 35 U.S.C. § 284;

c) An adjudication that each of KCT's, D-Link's, and Ruijie's infringement has been willful and deliberate, and an award to Skyworks of treble damages and pre-judgment interest under 35 U.S.C. § 284;

d) An adjudication that this case is exceptional under 35 U.S.C. § 285, and an award to Skyworks of its reasonable attorneys' fees;

e) An award to Skyworks of its costs and expenses in this action;

f) A permanent injunction restraining and enjoining each of KCT, D-Link, and Ruijie and their officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, attorneys, and all others in active concert or participation with any of the foregoing, from directly or indirectly infringing the Asserted Patents;

g) Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1 of this Court, Skyworks hereby demands a trial by jury as to all issues so triable.

Dated: July 17, 2024

Respectfully Submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

By: */s/ James M. Dowd*

James M. Dowd (SBN 211280)
*james.dowd@wilmerhale.com*
Derek A. Gosma (SBN 274515)
*derek.gosma@wilmerhale.com*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Tel: +1 213 443 5300

Joseph F. Haag (SBN 248749)
*joseph.haag@wilmerhale.com*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: +1 650 858 6000

Kate Saxton (*Admitted Pro Hac Vice*)
*Kate.Saxton@wilmerhale.com*
**WILMER CUTLER PICKERING HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Tel: +1 617 526 6000

*Attorneys for Plaintiff Skyworks Solutions, Inc.*